1           UNITED STATES DISTRICT COURT
            MIDDLE DISTRICT OF FLORIDA
2                 TAMPA DIVISION
3
            CASE NO: 8:12-cv-02928-RAL-EAJ
4

5

CULBREATH ISLES PROPERTY OWNERS
6   ASSOCIATION, INC., ORLINE M. SIDMAN,
    as personal representative of the
7   Estate of PHYLLIS ANN KIRKWOOD, and
    FLORIDA POLICYHOLDERS, LLC,
8
            Plaintiffs,
9
    vs.
10
    TRAVELERS CASUALTY AND SURETY
11  COMPANY OF AMERICA,
12          Defendant.
    _____/
13
14
                        3003 W. Azeele Street
15                      Suite 100
                        Tampa, FL 33609
16                      June 24, 2013
                        at 9:30 a.m.
17
18
            DEPOSITION OF ORLINE M. SIDMAN
19
20
21      Taken on behalf of the Defendants before
22  PHILIP RYAN, RPR, Court Reporter, Notary Public in
23  and for the State of Florida at Large, pursuant to
24  Defendant's Notice of Taking Deposition in the
25  above cause.

```
1   APPEARANCES:
2   MARK P. BUELL, ESQUIRE
    Buell & Elligett, P.A.
3   3003 W. Azeele Street
    Suite 100
4   Tampa, FL 33609
5           Attorney for Plaintiff Orline Sidman
6   GEORGE A. VAKA, ESQUIRE
    Vaka Law Group
7   777 S. Harbour Island Boulevard
    Suit 300
8   Tampa, FL 33602
9           Attorney for Plaintiff
            Florida Policyholders
10
    JAMES J. WIMSATT, ESQUIRE
11  Bush, Graziano, Rice & Platter, P.A.
    101 E. Kennedy Boulevard
12  Suite 1700
    Tampa, FL 33602
13
            Attorney for Plaintiff
14          Culbreath Isles Property
            Owners Association
15
    ANDREW V. TRAMONT, ESQUIRE
16  Rodriguez, Tramont, Guerra & Nunez, P.A.
    255 Alhambra Circle
17  Suite 1150
    Coral Gables, FL 33134
18
            Attorney for Defendant
19
20
21
22
23
24
25
```

1                          INDEX

2                                                    PAGE
     DIRECT EXAMINATION:

3    BY MR. TRAMONT                                   4
                     EXHIBIT INDEX

4

     Sidman Exhibit 1

5    Complaint for Permanent Injunctive              14
     Relief and Declaratory Relief.

6

     Sidman Exhibit 2

7    Joint Stipulation and Agreement.                15

8    Sidman Exhibit 3
     Second Amended Complaint.                        31

9

     Sidman Exhibit 4

10   Assignment of Claims.                            46

11   Sidman Exhibit 5
     Order appointing plenary guardian.               49

12

     Sidman Exhibit 6

13   Order granting petition for                      50
     authorization to act.

14

     Sidman Exhibit 7

15   Order admitting will to probate and              50
     appointing personal representative.

16

     Sidman Exhibit 8

17   Assignment of claims.                            57

18   Sidman Exhibit 9
     Amended assignment of claims.                    58

19

     Sidman Exhibit 10

20   Promissory Note.                                 60

21   Sidman Exhibit 11
     Policy of Insurance.                             61

22

23

24

25

1  Thereupon:

2                    ORLINE M. SIDMAN,

3  Was called as a witness and, having been first

4  duly sworn and responding "I do," was examined and

5  testified as follows:

6                    DIRECT EXAMINATION

7  BY MR. TRAMONT:

8      Q.    Would you please state your name for the

9  record, please.

10     A.    Orline Sidman.

11     Q.    Okay.  And that's O-R-L-I-N --

12     A.    O-R-L-I-N-E  S-I-D-M-A-N.

13     Q.    Thank you, Miss Sidman.

14     Would you give us your address?  And if you're

15  more comfortable just with your business address,

16  that's fine.  I don't need your home address.  If

17  you don't work --

18     A.    No, I don't.

19     Q.    It's good enough.

20     A.    3102 West Oaklyn, O-A-K-L-Y-N, Avenue

21  Tampa, 33609.

22     Q.    Miss Sidman, my name is Andy Tramont.  I

23  represent Travelers Insurance, which is the

24  Defendant in this lawsuit that you brought.

25     Have you ever had your deposition taken

1  before?

2      A.    No.

3      Q.    This is a deposition.  So let me ask you

4  have you ever testified before in court?

5      A.    No.

6      Q.    Have you ever testified in any kind of

7  administrative proceeding or anything like that?

8      A.    Hum, I don't remember if I did.  I don't

9  think so.

10     Q.    So to the best of your knowledge, is

11 this your first time testifying under oath?

12     A.    Maybe.

13     Q.    You seem unsure.

14     A.    I can't remember, but I think so.

15     Q.    We'll go into your background a little

16 bit.

17     A.    Okay.

18     Q.    Maybe that will jog your memory.  Just a

19 couple of ground rules.  I'm going to ask you some

20 questions, and I'd like you to articulate an

21 answer, either a yes or a no, and if you want to

22 explain, I'll let you explain, but the court

23 reporter cannot record a nod of the head or a

24 shake of the head.

25     A.    Okay.

1    Q.    So you have to articulate --

2    A.    All right.

3    Q.    -- an actual response.

4    And I will do my best to make sure I don't

5    interrupt you, and I guess Mark will probably tell

6    you that I'll probably fail in that regard since

7    he's seen me already in action.  But I will try to

8    let you finish your answer.  And if you're not

9    done with your answer and I do start to interrupt

10    you, please let me know --

11    A.    Okay.

12    Q.    -- if your attorney doesn't, and I'll be

13    happy to let you complete your answer.

14    If you do not understand the question that

15    I've asked you, please let me know, and I will

16    rephrase it to the best of my ability because if

17    you do answer a question that I've asked, I'm

18    going to assume that you understood what I was

19    asking you.

20    Is that fair?

21    A.    Yes.

22    Q.    Great.  Okay.  Why don't we get started

23    then.

24    Miss Sidman, I think you mentioned you don't

25    work.

1      A.    That's correct.

2      Q.    Okay.  And has that been the case for

3   some time now?

4      A.    Yes.

5      Q.    All right.  When was your last

6   employment?

7      A.    1998.

8      Q.    And what did you do in your last job?

9      A.    Taught school.

10     Q.    What grade did you teach?

11     A.    First grade.

12     Q.    First grade; okay.

13     And has that been your profession since --

14     A.    Yes.

15     Q.    -- you've got out of college I assume?

16     A.    Yes.

17     Q.    Let's talk about your education a little

18   bit.  Tell me about your post-high school

19   education.

20     A.    I went to the University of Southern

21   Mississippi in Hattiesburg, Mississippi and then I

22   finished at the University of South Florida here

23   in Tampa.

24     Q.    So you got your BA?

25     A.    I did.

1    Q.    At the University of --

2    A.    BS.

3    Q.    Okay.  And that was the University of

4    South Florida?

5    A.    Yes.

6    Q.    Do you have any post-graduate degrees?

7    A.    No.

8    Q.    Have you taken any kinds of courses

9    subsequent to getting your BA?

10   A.    No.

11   Q.    And you have a teaching certification --

12   A.    I do.

13   Q.    -- in Florida?  In any particular

14   subject area?

15   A.    Elementary education.

16   Q.    When did you obtain that?

17   A.    1972.

18   Q.    When did you graduate from college?

19   A.    Wait a minute.  Go back.  I graduated

20   from college in 1974.

21   Q.    Okay.

22   A.    That's when I got my certificate.

23   Q.    So you graduated from college in 1974?

24   A.    Uh-huh.

25   Q.    Are you sure you don't mean '84?  You

1  don't look like you graduated in '74.  I graduated

2  in '76 so.

3      A.    I graduated high school in '69.

4      Q.    Oh, you did?

5      A.    Yeah.

6      Q.    Wow!

7          MR. BUELL:  We can stipulate she's better

8      preserved than you if that's where you're

9      headed with this.

10          THE WITNESS:  Now you're making me blush.

11  BY MR. TRAMONT:

12      Q.    I had to point that out.  So good for

13  you.

14      So from 1974 to 1998, you taught school?

15      A.    I did.

16      Q.    All right.  And you decided to retire in

17  '98?

18      A.    Uh-huh.

19      Q.    Okay.  And were you always teaching at

20  the elementary school level?

21      A.    Yes.

22      Q.    You said you lived at 3102 West Oaklyn

23  Avenue.  I'm not familiar with Tampa, so I'm going

24  to ask you.  Is that in the Culbreath Isles

25  Condominium Association area?

1     A.   No.

2     Q.   Okay.  Tell me how it is that you got to

3 know Miss Kirkwood.  I'm assuming you did get to

4 know her at some point because you're serving as

5 representative of her estate.

6     A.   We were childhood friends.

7     Q.   How old was Miss Kirkwood when she

8 passed away?

9     A.   Well, she was 61.

10    Q.   And I'm going to ask only because I'm

11 uninformed on this.  Can you tell me what was the

12 cause of her death?

13    A.   Yes.  She had a stroke.

14    Q.   Oh, okay.

15 And what was the date she died, if you recall?

16    A.   A year ago.

17    Q.   A year ago in June?

18    A.   I can't remember exactly.  October, I

19 think.

20    Q.   Okay.  October of 2012; correct?

21    A.   Uh-huh.

22    Q.   That's a yes; right?

23    A.   Yes.

24    Q.   Yes.  Remember you have to articulate

25 it.

1    And had she been ill for some time, meaning

2  did she have the stroke and then she remained

3  incapacitated in some way or did she --

4       A.   Yes.

5       Q.   Okay.  And when did she have the stroke?

6       A.   She had the stroke in -- I can't

7  remember exact -- the exact dates, 2010.

8       Q.   Okay.  Quite prematurely?

9       A.   Uh-huh.

10      Q.   Okay.  At the time of her death, was

11 Miss Kirkwood married?

12      A.   No.

13      Q.   Did she have any children?

14      A.   No.

15      Q.   Had she ever been married?

16      A.   No, not to my knowledge.

17      Q.   And to the best of your knowledge, she

18 never had any children --

19      A.   No.

20      Q.   -- that you are aware of?

21      A.   No.

22      Q.   So when she had her stroke, did she

23 become immediately incapacitated?

24      A.   Yes.

25      Q.   And then you were appointed as her

1    guardian; is that correct?

2         A.    Yes.

3         Q.    And who was it that sought your

4    appointment if you recall?

5         A.    I don't understand.

6         Q.    Pardon me?

7         A.    I don't understand.

8         Q.    You became her --

9         A.    Right.

10        Q.    -- her guardian.

11        A.    Uh-huh.

12        Q.    And someone, either yourself or someone

13   else would have had to have filed something in

14   court for your appointment.  I'm just wondering

15   how that all came about.

16        A.    Myself.

17        Q.    And what prompted you to do that?

18        A.    She had no other family members.  She

19   was alone.

20        Q.    Did she have a will at that time?

21        A.    I didn't know.

22        Q.    Had she ever given you any kinds of

23   instructions that you would -- you should act on

24   her behalf in case she ever became incapacitated?

25        A.    No.

1     Q.    So you just did that based on your

2   lifelong relationship with her and just figured

3   that was something she would have wanted?

4     A.    Yes.

5     Q.    Okay.  So you became her guardian in

6   around 2010?

7     A.    I believe so.

8     Q.    Shortly after she had the stroke?

9     A.    Yes.

10    Q.    And where was she being cared for after

11  she had her stroke?

12    A.    In Tampa General Hospital.

13    Q.    And was she there for basically the

14  entire time before she passed?

15    A.    No, she was moved.

16    Q.    Okay.  In your capacity as her guardian,

17  what were your duties?

18    A.    Paid the bills where we had her placed,

19  visited her, took care of her needs to the best of

20  my ability.

21    Q.    Okay.  Okay.  So did you take over as

22  her representative in the lawsuit that had been

23  brought against her by Culbreath Isles?

24    A.    Explain.  What did you say?

25    Q.    Are you aware of a lawsuit having been

1   brought by Culbreath Isles Property Owners
2   Association against Miss Kirkwood?
3       A.    Uh-huh.
4       Q.    Are you aware of that?
5       A.    Yes.
6       Q.    All right.  And did you assume her role
7   as the Defendant in that case?
8       A.    No.
9       Q.    You did not?
10      A.    Huh-uh, no.
11      Q.    Okay.  I'm going to show you, Miss
12  Sidman, what I'm going to have marked as Sidman
13  Exhibit 1.  I ask you to take a look at that, Miss
14  Sidman, and ask if you could identify it for me,
15  please.
16      (Whereupon, Sidman 1 was marked for
17  identification)
18      A.    Hum, no.  Not really.
19      Q.    You've never seen this before.  And you
20  can take a minute to read through it if you'd
21  like.
22      A.    Well, I don't recognize it.  I've -- I
23  might have seen it; it might have come through.
24      Q.    Okay.  So is it your testimony you have
25  no recollection of a lawsuit having been brought

1   by Culbreath Isles against Miss Kirkwood?

2       A.    No.  I know I remember her telling me

3   that there was some complaint about her yard.

4       Q.    Right.

5       A.    That's all I really had to do with it is

6   listen to her, and I heard her say she was upset

7   about Culbreath Isles complaining about her yard.

8       Q.    Okay.

9       A.    That was before she became sick.

10      Q.    Okay.  All right.

11      A.    I never got into any of the business of

12  it.

13      Q.    You didn't?

14      A.    No.

15      Q.    Okay.  I'm going to show you what I'm

16  having marked as Sidman Exhibit 2, and I'd ask you

17  if could take a look at that for me, please.

18        (Whereupon, Sidman Exhibit 2 was marked for

19  identification)

20      A.    Well, again, if it came through the

21  mail, I might have seen it, but, you know, my

22  attorney -- I just let my attorneys take care of

23  everything.

24      Q.    All right.  Well, I'm going to tell you

25  this is entitled joint stipulation and agreement,

1    and it is a settlement agreement that was between

2    Culbreath Isles and Miss Kirkwood.

3        A.    Okay.

4        Q.    And it was executed -- if you go to the

5    back page, you will see that it was executed by

6    Mr. Buell on behalf of Miss Kirkwood on December

7    23rd, 2010, and by Culbreath's attorney on that

8    same day.

9        Do you see that?

10       A.    Yes.

11       Q.    Now, as of December 23rd, 2010, was Ms

12   Kirkwood incapacitated?

13       A.    I think she was.

14       Q.    Because you told me that she died around

15   October of 2012, and that she had the stroke in

16   2010.

17       A.    No, I can't remember exact, the dates.

18   I should have written them down, but...

19       Q.    Well, as you can see, this is executed

20   pretty much close to Christmastime.

21       A.    She was incapacitated at this time.

22       Q.    And you had already been appointed her

23   guardian at that time?

24       A.    Yes.

25       Q.    All right.  Do you recall getting

1   involved in any negotiations at all with Culbreath

2   Isles in order to settle the lawsuit that was

3   brought by Culbreath Isles against Miss Kirkwood?

4       A.   No.

5       Q.   All right.  Do you recall having any

6   conversations at all with your attorney concerning

7   the settlement of the lawsuit that Culbreath had

8   brought against Ms. Kirkwood --

9       A.   Well --

10      Q.   You've got to wait.

11         MR. BUELL:  Let me object and instruct

12      you not to answer with respect to any

13      conversations with your attorney.

14   BY MR. TRAMONT:

15      Q.   When you took -- when you became the

16   guardian for Ms Kirkwood, when did you -- had you

17   met Mr. Buell and anybody of his law firm -- like

18   Mr. Elligett -- prior to that?

19      A.   No.

20      Q.   Did you know anybody at the law firm

21   prior to that?

22      A.   I've known him, Mr. Buell, but not in a

23   legal situation.

24      Q.   You've known him socially?

25      A.   Yes.

1     Q.    Just as people --

2     A.    Socially.

3     Q.    -- in Tampa know?

4     Did Miss Kirkwood ever tell you that she was

5 being represented by Buell & Elligett?

6     A.    Yes.

7     Q.    So did you hire Buell and Elligett then

8 to continue to represent you when you became her

9 guardian?

10    A.    Well, I didn't hire him, but he -- I

11 guess he's just finishing up the estate or

12 whatever.  I didn't get involved with that.

13    Q.    Okay.  Do you recall any proceeding

14 being filed in the state court in Tampa to have

15 you appointed as guardian?

16    A.    No.

17    Q.    Your answer is no?

18    A.    No.

19    Q.    Do you recall ever seeing any formal

20 appointment papers whereby you were appointed as

21 Miss Kirkwood's guardian?

22    A.    I don't recall that.

23    Q.    How is it then that you became aware

24 that you were her guardian and that you could pay

25 her bills and collect her assets?

1    A.    Well, I was appointed guardian and then

2  I became her personal representative after her

3  death.

4    Q.    So my question is how did you become

5  aware that you were appointed guardian before she

6  died?

7    A.    I just don't understand the question.

8    Q.    Well, you tell me that you became

9  appointed guardian -- I'm not an estate lawyer or

10 a lawyer who does that type of work, and I'm

11 assuming that there has to be some sort of formal

12 proceeding where papers are executed and then

13 someone becomes a guardian.

14   A.    I did that with my attorney.

15   Q.    And who was your attorney that did that?

16   A.    Pete Kelly.

17   Q.    Do you know is he with Buell & Elligett?

18   A.    No.

19   Q.    Okay.  So then Mr. Keller took care of

20 getting your appointment as guardian?

21        MR. BUELL:  Kelly.

22        MR. TRAMONT:  Kelly.  I'm sorry.

23        THE WITNESS:  Yes.

24 BY MR. TRAMONT:

25   Q.    Was it also Mr. Kelly who took care of

1  your appointment as executor --

2      A.    Yes.

3      Q.    -- when Miss Kirkwood passed?

4      A.    Yes.

5      Q.    If you turn to Page 3 of Exhibit 2, and

6  if you go down to the bottom, at paragraph 1, and

7  it says:

8      "Plaintiff/Assignor Culbreath Isles, agrees to

9  entry of a consent final judgment against them in

10  the total gross amount of $295,000 in favor of

11  Defendant/Counterplaintiff assignee Kirkwood for

12  trial court and appellate fees and costs payable

13  to Buell & Elligett PA, attorneys for Kirkwood."

14      Have I read that correctly?

15      A.    Yes.

16      Q.    Did you -- are you aware of how much

17  money was spent by Ms Kirkwood, if any, in the

18  defense of the claims that were brought against

19  her by Culbreath Isles?

20          MR. BUELL:  Let me object to the line of

21      questioning regarding an exhibit that she

22      indicated she could not identify.

23          MR. TRAMONT:  You can answer.

24          THE WITNESS:  No.

25  BY MR. TRAMONT:

1     Q.   Are you aware of Miss Kirkwood having

2  paid anything to Buell & Elligett with respect to

3  any legal fees arising from any litigation with

4  Culbreath Isles?

5     A.   No.

6     Q.   Have you ever seen any bills that were

7  paid by -- any bills that were sent to Miss

8  Kirkwood from Buell & Elligett?

9     A.   No.

10     Q.   You said that when you became her

11  guardian that one of the things you were tasked

12  with doing was to pay her bills.

13     A.   That's correct.

14     Q.   Did you on her behalf ever pay any bills

15  to Buell & Elligett?

16     A.   No.

17     Q.   Do you know how that, the $295,000

18  that's referenced there, how -- what that

19  consisted of, how many hours were spent by Buell &

20  Elligett in the litigation of its client with

21  Culbreath Isles?

22     A.   No.

23     Q.   All right.  So you have no idea whether

24  that is an accurate or inaccurate number in terms

25  of representing Ms Kirkwood's costs of defense in

1    the litigation with Culbreath Isles?

2        A.    That's correct.

3        Q.    Okay.  Are you aware that Miss Kirkwood

4    also filed a counterclaim -- or strike that.

5        That Miss Kirkwood filed a counterclaim in

6    response to the action that was brought against

7    her by Culbreath Isles?

8        A.    Would you rephrase that some?

9        Q.    Are you aware that Miss Kirkwood

10    asserted a counterclaim or a claim against

11    Culbreath after Culbreath asserted its claim

12    against her?

13            MR. BUELL:  Object to the form.

14    BY MR. TRAMONT:

15        Q.    Pardon me?  Your answer is?

16        A.    No.

17    BY MR. TRAMONT:

18        Q.    I'm going to represent to you that she

19    did file a counterclaim.  Do you know what a

20    counterclaim is?

21        A.    Yes, I think.

22        Q.    Okay.  Tell me what you think it is, so

23    see if we're just on the same page.

24        A.    It's just another, another claim.

25        Q.    Right.  Let's say where Culbreath sues

1   her and then in addition to her defending against

2   that claim, she asserts her own claim against

3   Culbreath.

4        A.   I -- I'm not aware of it.

5        Q.   You're not aware of that?

6        A.   No.

7        Q.   You're not aware of the status of that

8   counterclaim that she brought --

9        A.   No.

10       Q.   -- against Culbreath Isles?

11       A.   No.

12       Q.   And you've never had your deposition

13   taken in the action with Culbreath Isles?

14       A.   No.

15       Q.   And you've never shown up to testify?

16       A.   No.

17       Q.   Have you ever shown up at any settlement

18   meetings?

19       A.   No.

20       Q.   Take a look, if you could, at Page 6 of

21   Exhibit 2.  On Page 6, it says in the third

22   paragraph down, under number 11, it says:

23       "Each party to this agreement represents to

24   the others that they are entering into this

25   agreement freely and voluntarily, being fully

1   advised of the legal effect of this document by

2   their respective attorneys."

3      Have I read that correctly, Miss Sidman?

4     A.   Yes.

5     Q.   Okay.  Now if you turn to last page,

6   Page 7, do you see the signature block for

7   Mr. Buell; correct?

8     A.   Yes.

9     Q.   And at the end, above the date, it says

10  that he and his firm are attorneys for Phyllis

11  Kirkwood.

12     Do you see that?

13    A.   Yes.

14    Q.   And it's dated September 23rd, 2010.

15    Do you see that?

16    A.   Yes.

17    Q.   As of December 23rd, 2010, was Ms

18  Kirkwood able to communicate with people?

19    A.   No.

20    Q.   Was she able to -- do you know whether

21  she was able to understand people with respect to

22  whatever anybody would say to her?

23    A.   I don't remember.  I don't know.

24    Q.   But I assume as her lifelong friend you

25  would try to communicate with her --

1  A.  Yes.

2  Q.  -- from time to time?

3  A.  Yes.

4  Q.  And as a good friend would.

5  And, unfortunately, was it the case that she

6  did not appear to be able to respond to you?

7  A.  Yes.

8  Q.  And was that the case shortly after she

9  had her stroke?

10  A.  Yes.

11  Q.  Immediately?

12  A.  Immediately.

13  Q.  Do you recall if you reviewed this

14  exhibit, this joint stipulation and agreement

15  before it was signed off by the attorney for Ms

16  Kirkwood and by the attorney for Culbreath Isles?

17  A.  No.

18  Q.  Okay.  To the best of your knowledge, is

19  this the first time you've ever seen this?

20  A.  Yes.

21  Q.  This is the first time you've ever seen

22  it?

23  A.  Yes.

24  Q.  Today?

25  Did you go over any -- did you go over any

1  documents, did you review any documents with your
2  attorney prior to the deposition today?
3       MR. BUELL:  Excuse me.  Let me instruct
4     you not to answer that question as violating
5     the privilege.
6  BY MR. TRAMONT:
7     Q.   Okay.  Tell me what you did, if
8  anything, in preparation for this deposition
9  today.
10    A.   I was notified that I needed to come
11 here and do this.
12    Q.   That was it?
13    A.   Yes.
14    Q.   Okay.  Take a look at this Exhibit 2
15 again.  And before we do that, let me ask you
16 this.  If I wanted to get a copy of something that
17 showed your appointment as the guardian --
18    A.   Uh-huh.
19    Q.   -- to the best of your knowledge, where
20 would I obtain that?  From you?
21       MR. BUELL:  I can get that for you.  In
22     fact I can get it for you right now if you'd
23     like.
24       MR. TRAMONT:  If you could.  Just take a
25     quick break.

1          (Short break)

2    BY MR. TRAMONT:

3        Q.    Miss Sidman, take a look again at

4    Exhibit 2.  And rather than go through paragraph

5    by paragraph, I'm just going to ask that you

6    read -- take a moment to read the Pages 2 through

7    7 and just tell me if you have any knowledge about

8    any of the recitals or any of the other parts of

9    the agreement which starts on Page 3.

10       I don't want to start to ask you questions

11   about something you know nothing about, but I need

12   to find out if I am right about that.

13            MR. BUELL:  She previously testified she

14       hadn't seen the exhibit before, so...

15            MR. TRAMONT:  But the recitals in the

16       agreement set forth subject matter.  So I'm

17       asking her if she's aware of any of the

18       subject matters that are described therein.

19            THE WITNESS:  No, no.

20   BY MR. TRAMONT:

21       Q.    So with respect to the subject matter

22   that is described in this Exhibit 2, you have no

23   personal knowledge of any of these areas?

24       A.    No.

25       Q.    Is that fair to say?

1       A.      That's fair to say.

2       Q.      Now, on Exhibit 1 -- which we touched on

3    earlier -- that's the complaint that was filed

4    against Miss Kirkwood.  Just take a look that for

5    a minute and tell me what, if anything, you have

6    knowledge of that's described in that complaint.

7           MR. BUELL:  Again, let me object.  She

8        testified that she could not identify the

9        exhibit, and I think it's inappropriate to

10       question regarding an exhibit that's not

11       identified.

12          MR. TRAMONT:  Again, I'm just asking her

13       about subject matter that's discussed in the

14       complaint.

15          MR. BUELL:  And she's also a lay

16       witness.  So I would object on that basis as

17       well.

18          THE WITNESS:  No.

19   BY MR. TRAMONT:

20       Q.      No, meaning you have no personal

21   knowledge of the subject matter that is discussed

22   in this --

23       A.      That's correct.

24       Q.      -- Exhibit Number 1?

25       That's correct?

1    A.    That's correct.

2    Q.    You said that Miss Kirkwood prior to her

3    becoming ill had talked to you about how Culbreath

4    was complaining about the -- what was it?  The

5    condition of her lawn?

6    A.    Uh-huh.

7    Q.    Yes?

8    A.    Yes.

9    Q.    Okay.  Tell me what, if anything, you

10   recall her talking about in that regard.

11   A.    I was only her friend just listening to

12   her complain, and I didn't get involved at all.

13   Q.    I understand you didn't get involved.

14   What, if anything, do you recall her --

15   A.    She was --

16   Q.    -- talking about?

17   A.    -- upset because they were complaining

18   that her yard was in disrepair.

19   Q.    Was it?

20   A.    I don't know.

21   Q.    Did you go to her house on occasion?

22   A.    Rarely.

23   Q.    Okay.  And when you were there, did you

24   see a lawn that appeared to be in disrepair?

25   A.    Not to me.

1     Q.    Did Miss Sidman ever tell you or did she

2  ever tell you or lead you to believe one way or

3  the other that the lawsuit against her by

4  Culbreath was justified or unjustified?

5     A.    I don't recall that.

6     Q.    Well, but did she say -- did she think

7  she had a messy lawn?

8     A.    No.

9     Q.    So is it fair to say that she did not

10  believe that this lawsuit against her was

11  justified?  Is that the impression you got from

12  her?

13     A.    Yes.

14     Q.    Yes?  It's for his benefit.

15     Did she ever talk to you about her having

16  hired lawyers to defend her against the charges by

17  Culbreath?

18     A.    Yes.

19     Q.    When she was sued, did she ask you for

20  any --

21     A.    No.

22     Q.    -- recommendation as to a lawyer?  The

23  reason I ask that is because you indicated that

24  you seemed to know Mr. Buell --

25     A.    Uh-huh.

1     Q.    -- prior to.

2     A.    No, she did not ask me.

3     Q.    Okay.  Let me just ask you how is it

4  that you got to know Mr. Buell?

5     A.    We -- we were childhood friends.

6     Q.    Okay.  Growing up in --

7     A.    Uh-huh.

8     Q.    -- Tampa?

9     A.    Yes.

10    Q.    Right.  Okay.  Okay.

11       So she didn't -- Miss Sidman didn't come to

12  you and say hey, do you know a lawyer that I can

13  hire?

14    A.    No.

15    Q.    Miss Sidman, I'm now going to show you

16  what I'm going to have marked as Sidman 3, and I'd

17  ask you to take a look at that and tell me if you

18  can identify it for the record.

19       (Whereupon, Sidman Exhibit 3 was marked for

20  identification)

21    A.    No.

22    Q.    All right.  I'm going to represent to

23  you that this is the second amended complaint

24  which was filed in the United States District

25  Court for the Middle District of Florida, in

1    Tampa, against my client Travellers Casualty and

2    Surety Company of America.  It says second amended

3    because there was an earlier one that was filed,

4    and from time to time sometimes attorneys modify

5    their allegations, and so that's called an

6    amendment, and that's what happened here.

7        You see that you are a party to this lawsuit?

8        A.    (The witness nodded.)  I see that.

9        Q.    You see that?  All right.

10       And is this the first time that you have seen

11   this second amended complaint?

12       A.    Yes.

13       Q.    All right.  If this were to simply say

14   complaint on it and not second amended, if it was

15   the first complaint that was filed by your lawyers

16   in this case, would it be fair to say that you had

17   not seen that before it was filed?

18            MR. BUELL:  Object to the form regarding

19        an exhibit that's not here.

20            MR. TRAMONT:  Okay.

21   BY MR. TRAMONT:

22       Q.    Let me ask you this:  Have you ever seen

23   this second amended complaint before today?

24       A.    No.

25       Q.    All right.  Have you ever seen the

1    original complaint that was filed against

2    Travelers in this same court proceeding?

3         A.   No.

4         Q.   You don't recall reviewing any complaint

5    against my client before it was filed in court?

6         A.   That's correct.

7         Q.   All right.  Take a look at Page 2 of

8    this second amended complaint, and you see a

9    paragraph 4.  It says:

10        "FP is a Florida Limited Liability Corporation

11   with its principal place of business in Tampa,

12   Hillsborough County, Florida."

13        Have I read that correctly?

14        A.   Yes.

15        Q.   If you go back to the opening paragraph

16   on Page 1, FP appears to be the abbreviation for

17   Florida Policyholders, LLC.

18        Do you see that?

19        A.   Yes.

20        Q.   Okay.  Tell me if you know what Florida

21   Policyholders, LLC is?

22        A.   I don't know.

23        Q.   Did you ever hear of it before today?

24        A.   No.

25        Q.   All right.  Take a look at paragraph

1  eight on Page 2, and that says:

2      "Travelers issued a policy of insurance to

3  Culbreath Isles, a copy of which is attached

4  hereto as Exhibit A."

5      Do you see that?

6      A.   Yes.

7      Q.   Are you aware of Travelers having issued

8  a policy of insurance to Culbreath Isles?

9      A.   No.

10     Q.   The next paragraph, paragraph nine,

11  says:

12      "Travelers was asked to defend and indemnify

13  its insured Culbreath Isles against claims brought

14  against it in two separate actions." And then it

15  mentions the action brought against Miss

16  Kirkwood.

17      Are you aware of Travelers having been asked

18  to defend and indemnify Culbreath Isles against

19  claims brought against it by Miss Kirkwood?

20     A.   No.

21     Q.   Paragraph 10 says:

22      "Travelers breached the contract of insurance

23  referenced in paragraph eight by refusing to

24  defend and indemnify its insured Culbreath Isles

25  with regard to fees and costs sought in both the

1  Lewis case and the Kirkwood case."

2      Have I read that correctly?

3      A.    Yes.

4      Q.    Are you aware of any facts to support

5  that allegation in paragraph 10?

6          MR. BUELL:  Object to the form.

7  BY MR. TRAMONT:

8      Q.    Are you aware?

9      A.    No.

10     Q.    All right.  Are you aware of whether

11 Travelers breached its contract of insurance or

12 didn't breach its contract of insurance?

13     A.    No, I'm not aware.

14         MR. BUELL:  Object to the form.

15 BY MR. TRAMONT:

16     Q.    Pardon me?

17     A.    No.

18     Q.    Paragraph 11, says:

19     "Final judgment was entered in the Kirkwood

20 case against Culbreath Isles and for Kirkwood on

21 December 29, 2010, in the amount of $295,000."

22     Do you see that?

23     A.    I do.

24     Q.    Are you aware of a final judgment having

25 been entered for Miss Kirkwood on December 29,

1   2010, in the amount of $295,000?

2       A.   No.

3       Q.   Paragraph 12 says:

4       "Culbreath Isles has assigned to Kirkwood and

5   Buell & Elligett, PA its right to proceed against

6   Travelers with regard to the Kirkwood judgment."

7       Do you have any knowledge about that one way

8   or the other?

9           MR. BUELL:  Object to the form.

10          THE WITNESS:  No.

11  BY MR. TRAMONT:

12      Q.   Paragraph 13 says that -- or strike

13  that.  Let's just continue with paragraph 12.  It

14  says:

15      "Kirkwood is a third-party beneficiary of the

16  contract for insurance issued by Travelers."

17      Do you see that?

18      A.   Yes.

19      Q.   Are you aware of whether Kirkwood is a

20  or was a third-party beneficiary of the contract

21  for insurance issued by Travelers?

22          MR. BUELL:  Object to the form.  You can

23      answer.

24          THE WITNESS:  No.

25  BY MR. TRAMONT:

1          Q.    Paragraph 13, says:

2          "Buell & Elligett, PA has assigned its right

3     to proceed against Travelers to Florida

4     Policyholders, LLC."

5          Do you see that?

6          A.    I do.

7          Q.    Are you aware of anything having to do

8     with that allegation?

9          A.    No.

10         Q.    Take a look at paragraph 14 -- or, no.

11    We'll skip that.  That has to do with the Lewis

12    case.

13         Take a look at -- read through paragraph 15

14    and tell me if you have any knowledge concerning

15    those allegations, whether they're true or not or

16    any facts to support them.

17              MR. BUELL:  Object to the form.

18              THE WITNESS:  No.

19    BY MR. TRAMONT:

20         Q.    How about paragraph 16?  Do you have any

21    knowledge about that allegation?

22              MR. BUELL:  Object to the form.

23              THE WITNESS:  No.

24    BY MR. TRAMONT:

25         Q.    Take a look at paragraph 18 and read

1  through that and tell me if you have any
2  knowledge, any personal knowledge concerning those
3  allegations.
4          MR. BUELL:  Object to the form.
5          THE WITNESS:  No.
6  BY MR. TRAMONT:
7      Q.    The second sentence of that paragraph 18
8  says:
9      "Travelers breached said policy by refusing to
10  defend and indemnify Culbreath Isles."
11      Is it fair to say that you don't have any
12  knowledge one way or the other, Miss Sidman, as to
13  whether Travelers breached its policy or did not
14  breach its policy?
15          MR. BUELL:  Object to the form.
16          THE WITNESS:  It's fair to say I don't.
17  BY MR. TRAMONT:
18      Q.    And the next paragraph says:
19      "Kirkwood and FP are assignees of Culbreath
20  Isles's rights to proceed against Travelers with
21  regard to the Kirkwood judgment."
22      You don't have any knowledge about that
23  either, do you?
24      A.    No.
25          MR. BUELL:  Object to the form.

1      THE WITNESS:  No.

2  BY MR. TRAMONT:

3      Q.   Now, I know it's a number of pages, but

4  I'm assuming as a teacher maybe you read fast, you

5  haven't lost that skill, and I'd ask you to read

6  through the rest of it and tell me if you have any

7  personal knowledge about any of the information

8  contained in any of these paragraphs that I could

9  question you about.

10      MR. BUELL:  Object to the form.

11      THE WITNESS:  No.

12  BY MR. TRAMONT:

13      Q.   So is it accurate to say that you do not

14  have personal knowledge about any of the

15  allegations contained in this second amended

16  complaint that I could question you about?

17      A.   Yes.

18      Q.   I won't question you about that.

19      You mentioned before that, if I recall

20  correctly, that you were childhood friends with

21  Miss Kirkwood.  Did you?

22      A.   Yes.

23      Q.   All right.  And you said I think that

24  you were childhood friends or that you have known

25  Mr. Buell for a long time.

1      A.      Uh-huh.

2      Q.      Is it -- is it the case that Mr. Buell

3   was also friends with Miss Kirkwood?

4      A.      Yes, that's correct.

5      Q.      And the three of you maybe grew up

6   together?

7      A.      Yes.

8      Q.      In one way or another?

9      A.      School.

10     Q.      Okay.  Also, one of the housekeeping

11   rules I failed to mention is any time you want to

12   take a break for whatever reason, just let me

13   know.

14     A.      Thank you.

15     Q.      Because I can't tell, and you have to

16   let me know.

17     Even though you don't have -- you do not

18   appear to have any knowledge about this lawsuit

19   that is brought against Travelers and that we're

20   here on today, you recognize, do you not, that you

21   are a Plaintiff in that lawsuit?

22     You are looking at me quizzically.  Do you

23   want to take a look at the caption?

24     A.      I know that I'm --

25          MR. BUELL:  Yeah, object to the form.

1           THE WITNESS:  I'm a personal

2       representative.  That's all I know.  My

3       attorneys take care of everything else.

4   BY MR. TRAMONT:

5       Q.    Right.  But you realize that as personal

6   representative, you have sued my client Travelers?

7       A.    I'm really not aware of any of the

8   legality involving...

9       Q.    But you do realize that -- is it fair to

10  say that you realize that you are in a lawsuit as

11  a personal representative?

12      A.    Yes.

13      Q.    And that you have brought this lawsuit

14  against my client Travelers?

15      A.    I don't have any -- I don't understand.

16  I'm not a lawyer.  The lawyers take care of

17  everything.

18      Q.    All right.  Well, then it is fair to say

19  that you don't understand that?

20      A.    Yes.

21      Q.    Okay.  Let's just go -- all right.

22      Turning once again to Exhibit 3, which I said

23  I wouldn't go back to, but I am, if you go to page

24  or go to paragraph 39.

25      A.    Nine.

1    Q.    Paragraph 39.

2    A.    Thirty-nine.

3    Q.    Mr. Buell can direct you to it quickly.

4  You see right beneath paragraph 39 there is a

5  paragraph that starts off with the word

6  "wherefore."

7    Do you see that?

8    A.    Yes.

9    Q.    And you see that it says:

10   "Wherefore Plaintiffs Orline Sidman" --

11   A.    Yes.

12   Q.    -- "as personal representative of the

13  estate of Phyllis Ann Kirkwood and Florida

14  Policyholders, LLC, demand judgment against

15  Travelers in the amount of $295,000."

16   Do you see that?

17   A.    Yes.

18   Q.    And you know what a judgment is, do you

19  not?

20   A.    Yes, yes.

21   Q.    All right.  And you know what it means

22  to demand that from someone, do you not?

23   A.    Yes.

24   Q.    So is it fair to say that you realize at

25  least now that you are suing my client for

1  $295,000?

2      A.   I know nothing about any of this.  My

3  attorneys take care of everything.

4      Q.   Okay.  So then it is fair to say you

5  know nothing about this, about suing my client for

6  $295,000?

7          MR. BUELL:  Object to the form.  It's

8      been asked and answered.  You're asking a lay

9      witness a bunch of legal questions.

10         MR. TRAMONT:  I'm asking the Plaintiff.

11         MR. BUELL:  Yeah.  The plaintiff is a lay

12     witness.

13         MR. TRAMONT:  You can answer the

14     question.

15         THE WITNESS:  I see it before me, but I

16     don't -- I'm not involved.

17 BY MR. TRAMONT:

18     Q.   Okay.  I may have asked you this

19 before.  Did Miss Kirkwood have any heirs?

20     A.   No.

21         MR. BUELL:  You did ask.

22         MR. TRAMONT:  I probably did.

23 BY MR. TRAMONT:

24     Q.   What, if anything, have you done with

25 respect to any assets that she had at the time of

1   her death?

2          MR. BUELL:  Object to the form.  This is

3       getting -- I mean I intend to give you a wide

4       latitude, but, you know, what's going on with

5       Miss Kirkwood assets and so on has really

6       absolutely no relevance whatsoever to this

7       suit.  Can you tell me why you want to inquire

8       on that?

9          MR. TRAMONT:  I think it's relevant

10      because I want to find out what's going to

11      happen with this $295,000 that your client is

12      seeking from my client, and I want to find out

13      if there is anybody in the line of descent

14      from Miss Kirkwood that would benefit from

15      this or where this money is going.  I think

16      I'm entitled to find out if she knows.

17         MR. BUELL:  I don't think you are.  I

18      think that invades the attorney-client

19      privilege because the only way she would know

20      that would be from having spoken to her

21      attorneys.  So I'm going to instruct her not

22      to answer that question or any similar

23      questions.

24         MR. TRAMONT:  All right.

25   BY MR. TRAMONT:

1    Q.    Did Miss Kirkwood own her home before

2  she died?

3    A.    Yes.

4    Q.    Has that home been sold?

5    A.    Yes.

6    Q.    All right.  And when was it sold?

7    A.    Three months ago.

8    Q.    What did it sell for?

9    A.    Somewhere like 400,000.

10   Q.    Was that close to what you were asking

11 for or within the ball park?

12   A.    Uh-huh.

13   Q.    Okay.  Where is that money currently

14 sitting?

15        MR. BUELL:  I'm going to again object to

16     this line of questioning.  It has no

17     relevance.  I mean what is in her estate, what

18     bank the money is in has got nothing to do

19     with whether or not there's coverage, and I

20     think this is, you know, becoming harassing

21     rather than seeking information that's

22     relevant to the suit.

23        Presumably -- well, to the extent that

24     that information came from your attorney, I

25     would instruct you not to answer.

 1          THE WITNESS:  Okay.

 2     BY MR. TRAMONT:

 3          Q.    Okay.  I'm going to show you now Miss

 4     Sidman a document that I'm having marked as Sidman

 5     4.  I would ask you to take a look at this and ask

 6     you if you have ever seen this before.

 7          (Whereupon, Sidman Exhibit 4 was marked for

 8     identification)

 9          A.    No.

10          Q.    Now, you'll see above the -- or right

11     below the signature on Page 2 of someone named

12     Saade Chibani.  It seems to be dated December

13     28th, 2010.

14          Do you see that?

15          A.    Yes.

16          Q.    All right.  And, again, just for clarity

17     of the record, was Ms Kirkwood incapacitated as of

18     that date?

19          A.    Yes.

20          Q.    Take a look at what I've had marked and

21     I will identify for the record as the assignment

22     of claims, and I would ask that you read through

23     it and tell me if you have any personal knowledge

24     of any of the representations or statements

25     contained in this exhibit.

1     MR. BUELL:  Object to the form.

2          THE WITNESS:  No, I have no knowledge of

3     this.

4  BY MR. TRAMONT:

5     Q.    But if you look at the first paragraph,

6  it talks about Culbreath assigning and

7  transferring to Ms Kirkwood and/or Buell &

8  Elligett quote, "Any and all rights, claims, and

9  entitlements to proceeds of or from any and all

10  claims and/or causes of action of whatsoever kind

11  and nature that said assignor Culbreath Isles may

12  have against or have a right to receive from

13  Travelers Casualty and Surety Company of

14  America."

15     Do you see that?

16     A.    Yes.

17     Q.    And you're telling me that you have no

18  knowledge of Culbreath having assigned to Ms

19  Kirkwood any right to sue Travelers or any right

20  to collect from Travelers the proceeds of a

21  lawsuit that would be brought against Travelers?

22     A.    That's correct.

23          MR. BUELL:  Object to the form.  By the

24     way, the document you had asked for earlier, I

25     think I have copies.

1           MR. TRAMONT:  You got it?  Great.

2           MR. BUELL:  Yeah.  I'm going to hand you

3     an order granting the petition for

4     authorization to act as plenary guardian,

5     which apparently was signed by Judge Isom

6     March 9, 2011; okay?  And that's -- I think

7     that's the guardianship document, and then

8     there is an order admitting the will to

9     probate and appointing the personal

10    representative dated March 12, 2013, again by

11    Judge Isom.

12          MR. TRAMONT:  Great.  Thank you.

13          MR. BUELL:  Uh-huh.  If you don't mind my

14    asking, to the extent that they clarify the

15    dates that you had asked about earlier -- I

16    mean I can do it if you don't, but I would ask

17    that you clear that up because I don't -- I

18    don't...

19          MR. TRAMONT:  I will go over it.  Why

20    don't we take a few minutes so I can read

21    through these?

22          MR. BUELL:  Sure.

23          MR. TRAMONT:  Okay?  Thank you.

24               (Short break)

25   BY MR. TRAMONT:

1    Q.    Miss Sidman, your counsel has provided

2  me with some documents concerning the guardianship

3  and the estate proceedings, and so I would just

4  like to hand them to you and -- let's see.  That

5  would be -- let me see.  Do you have copies

6  yourself?

7    A.    Yes.

8    Q.    Let's do them in chronological order

9  because I think the first one is the order

10 appointing you as plenary guardian.  That would be

11 dated February 16th, 2011.

12   A.    That's correct.

13       MR. BUELL:  Exhibit 5.

14       MR. TRAMONT:  We will make that Exhibit

15 5.  If you could just do the honors there.

16       (Whereupon, Sidman Exhibit 5 was marked

17 for identification)

18   Q.    The next one would be the order granting

19 your petition to act, and that is dated March 9,

20 2011; is that correct?  Or it looks like --

21   A.    March?

22   Q.    March 9, 2011?

23   A.    Is that what --

24       MR. BUELL:  No.  He's asking you.

25       THE WITNESS:  Oh, this one?  This one.

1      MR. TRAMONT:  Yes, I've tried to do that

2   in chronological order.

3      THE WITNESS:  Yes.

4      MR. TRAMONT:  We will make that Exhibit

5   6.

6      (Whereupon, Sidman Exhibit 6 was marked

7   for identification)

8   BY MR. TRAMONT:

9      Q.    And then finally we have the order

10  admitting will to probate and appointing personal

11  representative, and that's dated March 12, 2013;

12  is that correct?

13     A.    That's correct.

14     MR. TRAMONT:  All right.  We're going to

15   make that Number 7, and I will ask that you

16   put the stamp on it.

17     (Whereupon, Sidman Exhibit 7 was marked

18  for identification)

19  BY MR. TRAMONT:

20     Q.    If we turn our attention first to

21  Exhibit 5, again this appears to be dated February

22  16th of 2011; is that correct?

23     A.    Yes.

24     Q.    Prior to that time, to the best of your

25  knowledge, did you have any authority to act on

1  behalf of Miss Kirkwood?

2      A.    No.

3      Q.    Take a look at Exhibit 6, which is

4  entitled Order Granting Petition For Authorization

5  To Act.  Attached to that is a petition for

6  authorization to act.

7      Do you see that?

8      A.    Yes.

9      Q.    And that petition for authorization to

10  act, that is signed by you, is it not?

11     A.    Yes.

12     Q.    And it's signed by you on March 2nd of

13  2011; correct?

14     A.    Yes.

15     Q.    Correct?

16     A.    Yes.

17     Q.    Prior to -- and you read through the

18  petition for authorization to act.  Tell me if you

19  recall seeing this document before.

20     A.    I've seen it because I signed it, and my

21  attorney asked me to sign it.

22     Q.    All right.  Did you recall reading it

23  beforehand?

24     A.    I might have looked through it, but I,

25  you know?

1       Q.    Again, I see you're focusing on the
2    first page.  I would ask you to go to the second
3    page.
4       A.    Oh, okay.  This one.
5       Q.    Which is the document --
6       A.    Yes.
7       Q.    -- you signed.  Read through it and tell
8    me if you recall reading it so that you knew what
9    you were signing at the time.
10      A.    You know, I didn't get into it.  I know
11   I signed it, but, again, I'm letting the lawyers
12   take care of everything.
13      Q.    All right.  You see in paragraph two of
14   that petition for authorization to act, it talks
15   about the lawsuit, about Ms Kirkwood having been a
16   party in the lawsuit that was brought by Culbreath
17   against her.
18      Do you see that?
19      A.    Yes.
20      Q.    But, again, you don't have any knowledge
21   about that; correct?
22      A.    That's correct.
23      Q.    All right.  And then in paragraph three,
24   it talks about a final judgment having been
25   entered in her favor in the amount of $295,000; is

1   that correct?

2      A.   I see it.

3      Q.   And it's fair to say that you don't have

4   any knowledge about that; right?

5      A.   That's correct.

6      Q.   Same thing with paragraph five of that

7   petition.

8      A.   Uh-huh.  I see it.

9      Q.   Did you have any knowledge about that

10   when you signed it?

11      A.   No.

12      Q.   And do you have any knowledge about that

13   today?

14      A.   No.

15      Q.   All right.  And, again, we go to the

16   first page, and we see that this was -- this was

17   signed or entered by the Court on March 9, 2011.

18   You see the date stamped on there?

19      A.   Yes.

20      Q.   And is it accurate to say that prior to

21   March 9th, 2011, when this order was entered, as

22   far as you know, you had no authority to act on

23   behalf of Miss Kirkwood with respect to the

24   lawsuit that was with respect to any lawsuit

25   against Travelers?

1             MR. BUELL:  Object to the form.

2             THE WITNESS:  Yes.

3    BY MR. TRAMONT:

4        Q.    And is it fair to say that prior to

5    March 9th, 2011, as far as you know, you had no

6    authority to act on behalf of Miss Kirkwood with

7    respect to the lawsuit that had been brought

8    against her by Culbreath Isles?

9        A.    That's correct.

10            MR. BUELL:  Object to the form.

11   BY MR. TRAMONT:

12       Q.    And now, just to be clear, if we go back

13   to Exhibit 2, which was the joint stipulation and

14   agreement -- Mark will pull it out for you.  This

15   is a settlement agreement.

16       A.    Uh-huh.

17       Q.    And you'll see on the last page that it

18   was signed by Mr. Buell on behalf of Miss Kirkwood

19   as of December 23, 2010; correct?

20       A.    Uh-huh.

21       Q.    And as far as -- just so I understand

22   correctly, now that we have some of the dates

23   filled out here --

24       A.    Uh-huh.

25       Q.    -- is it still your understanding and

1  recollection that Miss Kirkwood was incapacitated
2  as of December 23, 2010?
3      A.   Yes.
4      Q.   Thank you.
5      Take a look, if you could, at Exhibit 7, which
6  was the order admitting will to probate and
7  appointing personal representative.
8      A.   Uh-huh.
9      Q.   Do you have that in front of you?
10     A.   Uh-huh, yes.
11     Q.   Now, I'm going to caution you that I'm
12 not an estate lawyer, so my questions may sound
13 foolish.  They may sound stupid more so than my
14 usual lawyerly questions do.
15         MR. BUELL:  Let me caution you that she's
16     not an estate lawyer either.  So we're all
17     clear.
18         MR. TRAMONT:  Okay.  It's an area that I
19     would never go near.
20 BY MR. TRAMONT:
21     Q.   But anyway, the first sentence of this
22 says:
23     "The instrument presented to this Court as the
24 last will of Phyllis Ann Kirkwood deceased, having
25 been executed in conformity with the law."

1      And then it goes on and on.  And my question
2  to you is, do you recall seeing a last will of
3  Miss Kirkwood or any will of Miss Kirkwood?
4      A.    Something.  A will, yes.
5      Q.    You did see it.  You recall seeing a
6  will?
7      A.    Uh-huh.  Not a formal will.
8      Q.    All right.  Well, tell me just what you
9  recall seeing in that regard.
10     A.    Just something she wrote where she
11 wanted her monies to go when she passed.
12     Q.    Now, is it fair to say she wrote that
13 before she had her stroke in 2010?
14     A.    Yes.
15     Q.    Okay.  And do you recall generally where
16 she said she wanted her money to go?  And the
17 reason I ask that is because, you know, you
18 testified before that she had no children.
19     A.    Uh-huh.
20     Q.    And was not married.  So just if you
21 recall generally as to where she said she wanted
22 her money to go.
23     A.    The Humane Society.
24     Q.    The Animal Humane Society?
25     A.    Uh-huh.

1     Q.    And was that the only --

2     A.    As far as I know.

3     Q.    The only beneficiary as far as you know?

4     A.    Uh-huh.

5     Q.    To the best of your recollection, Miss

6   Sidman, did she have any living siblings?

7     A.    No.

8     Q.    What did she do for a living?

9     A.    She didn't work.

10     Q.    I'm going to show you now -- hold on a

11   second -- what I'm having marked as Exhibit 8, and

12   this is another document that is entitled

13   assignment of claims.  And I would ask that you

14   take a look at that and tell me if you recognize

15   it.  It's a little bit different than what I

16   showed you before that had the same title.

17        (Whereupon, Sidman Exhibit 8 was marked for

18   identification)

19        Have you ever seen this document before?

20     A.    No.

21     Q.    If I were to tell you, Ms Sidman, that

22   Culbreath Isles had a claim against Travelers, and

23   Culbreath Isles, pursuant to the first assignment

24   that we looked at -- which I believe was marked

25   Exhibit 4 -- that Culbreath Isles had transferred

1   to Miss Kirkwood the right to sue Travelers or the
2   right to collect from a lawsuit against Travelers,
3   is it your testimony that you have absolutely no
4   knowledge about that?

5       A.   Yes.

6       Q.   Do you have any knowledge as to how much
7   money you are going to recover from Travelers if
8   you prevail in this lawsuit?

9       A.   No.

10      Q.   I'm now going to show you what I'm
11  having marked as Sidman 9 and ask you to take a
12  look at this, which is entitled Amended Assignment
13  of Claims, and I would ask if you could tell me if
14  you have ever seen this document before.

15       (Whereupon, Sidman Exhibit 9 was marked for
16  identification)

17      A.   No.

18      Q.   Take a minute, if you could, to read
19  through and tell me if you're familiar with any
20  of -- if you have any knowledge about the subject
21  matter that is discussed in this amended
22  assignment of claims.

23      A.   No.

24      Q.   Now, it's hard to read this Exhibit 9 at
25  the end, the dates, but I can -- I will represent

1  to you that it is executed by Culbreath Isles on
2  January 28, 2013. You see that there's a 13 in
3  the far right for the year, don't you?
4      A.    Uh-huh.
5      Q.    Okay. So it was executed on January
6  28th of 2013, and I think that she died on
7  December 24th of 2012.
8      A.    Yes.
9      Q.    Is that right? I saw that somewhere,
10 Christmas Eve.
11     A.    Yes. Ruined my evening.
12          MR. TRAMONT: I will go off the record
13     for a second.
14               (Off the record)
15 BY MR. TRAMONT:
16     Q.    So is it fair to say, Ms Sidman, that
17 you've not seen this document before?
18     A.    That's correct.
19     Q.    And you're not familiar with the subject
20 matter that is addressed in this document?
21     A.    That's correct.
22          MR. TRAMONT: Mark, is it accurate to say
23     she knows nothing about anything to do with
24     the list?
25          MR. BUELL: Yeah.

1          MR. TRAMONT:  Take a look now, if you
2       could, Miss Sidman at what I'm having marked
3       as Exhibit 10, and I would ask that you take a
4       look at this.  And for some reason, guys, I
5       only have one of these.  I'm sorry.
6        (Whereupon, Sidman Exhibit 10 was marked for
7     identification)
8       Q.    Have you ever seen this promissory note
9     before?
10      A.    No.
11      Q.    Oh, I'm sorry.  I do have an extra one.
12    There you go, guys.
13      Ms Sidman, after the order was entered
14    allowing you to proceed on this claim against
15    Travelers, did you do anything to familiarize
16    yourself with the background of this lawsuit or
17    whatever it was all about?
18      A.    No.
19      Q.    No.  And I'm going to ask just a few
20    questions, and if any of them involve
21    conversations with your attorney or anything that
22    your attorney directed you to do, Mr. Buell will
23    instruct you not to answer, and I will respect
24    that.
25      I want to know is there anything that you

1    did -- did you get a bunch of documents and look
2    through them to see --
3         A.    No.
4         Q.    -- what was going on?
5         A.    No.
6         Q.    Who is Patricia Scalise, if you know?
7         A.    I don't know.  Who is she?
8         Q.    She appears to be a witness to this, the
9    execution of this promissory note.
10        Do you see that on page --
11        A.    I do not know who she is.
12        Q.    Scalise or Scalini.  You don't know
13   her.
14        A.    I've never heard of her.
15        Q.    That's fine.  Just read through the
16   promissory note quickly, if you can, and tell me
17   if you're familiar -- if you have any personal
18   knowledge about the subject matter addressed in
19   the promissory note.
20             MR. BUELL:  Object to the form.
21             THE WITNESS:  No.
22   BY MR. TRAMONT:
23        Q.    I'm now going to have marked as Exhibit
24   11, a policy of insurance that was issued by
25   Travelers to Culbreath Isles.

```
1          (Whereupon, Sidman Exhibit 11 was marked
2     for identification)
3          A.    No, I've never seen this.
4          Q.    You've never --
5          A.    No.
6          Q.    You've never reviewed this document?
7          A.    No.
8               MR. BUELL:  I'm not sure, for the
9          record, this is the policy.
10              MR. TRAMONT:  What is the date?
11              MR. BUELL:  Well, the letter on top
12         says January 7, 2010, and the policy -- the
13         only policy that Travelers provided to us in
14         response to the statutory notice and so on
15         was the earlier policy from '09 to '10
16         rather than this is from '10 to '11.
17              MR. TRAMONT:  Didn't we send the
18         supplemental production?  Didn't we send you
19         other policies?
20              MR. BUELL:  Last week I was going to
21         say we got either some or all of the other
22         policies.  That is not the one that's
23         attached to the complaint in this case.
24              MR. TRAMONT:  All right.
25     BY MR. TRAMONT:
```

1      Q.    Have you ever seen any policy of

2   insurance that Travelers issued to Culbreath?

3      A.    No.

4           MR. TRAMONT:  I have nothing further.

5           MR. BUELL:  No questions.

6           MR. WIMSATT:  No questions.

7           MR. VAKA:  Nothing.

8           MR. TRAMONT:  Thank you, Miss Sidman.

9           THE WITNESS:  Thank you.

10          MR. TRAMONT:  You have her waive

11   reading and signing; right?

12          MR. BUELL:  No, she would like to read

13   and sign.

14          MR. TRAMONT:  Okay.

15       (THEREUPON, the taking of the deposition

    was concluded at 11:15 a.m.)

16

17

18

19

20

21

22

23

24

25

1                     UNITED STATES DISTRICT COURT
                       MIDDLE DISTRICT OF FLORIDA
2                          TAMPA DIVISION
3
                    CASE NO: 8:12-cv-02928-RAL-EAJ
4

5

    CULBREATH ISLES PROPERTY OWNERS
6   ASSOCIATION, INC., ORLINE M. SIDMAN,
    As personal representative of the
7   Estate of PHYLLIS ANN KIRKWOOD, and
    FLORIDA POLICYHOLDERS, LLC,
8
                  Plaintiffs,
9
    vs.
10
    TRAVELERS CASUALTY AND SURETY
11  COMPANY OF AMERICA,
12                Defendant.
    _____/
13
                    DEPONENT SIGNATURE PAGE
14
15          I HAVE READ THE FOREGOING TRANSCRIPTION
    OF MY DEPOSITION, PAGES 4 THROUGH 63, TAKEN ON
16  JUNE 24, 2011, AND HEREBY SUBSCRIBE TO THE
    FOREGOING DEPOSITION, SAID SUBSCRIPTION TO
17  INCLUDE ANY CORRECTIONS AND/OR AMENDMENTS
    HERETO.
18
19

20  _____

    ORLINE M. SIDMAN
21
22          WITNESS MY HAND AND OFFICIAL SEAL THIS
    _____ DAY OF _____, 2013
23
24
    _____
25  Notary Public

```
                                                              1
 1                        ERRATA SHEET
 2   RE     : Culbreath Isles Property Owners Association etal.
     DEPO OF: Oriine M. Sidman        v. Travelers
 3   TAKEN  : June 24, 2013, at 9:30 am
 4     DO NOT WRITE ON TRANSCRIPT, ENTER ANY CHANGES HERE
 5   Page #    Line #    Change               Reason
 6     10      14-23     Phyllis died Dec. 24, 2012   _____
 7     13       5-9      I became guardian            _____
 8                       on Feb. 17, 2011             _____
 9     16      19-24     I had not yet been           _____
10                       appointed guardian at        _____
11                       that time.                   _____
12     ___      ___      _____             _____
13     ___      ___      _____             _____
14     ___      ___      _____             _____
15     ___      ___      _____             _____
16     ___      ___      _____             _____
17     ___      ___      _____             _____
18     ___      ___      _____             _____
19     ___      ___      _____             _____
20     ___      ___      _____             _____
21   State of Florida)
     County of Hillsborough
22
     Under penalties of perjury, I declare that I have
23   read my deposition transcript, and it is true and
     correct subject to any changes in form or substance
24   entered here.
     10/17/2013          Oriine M. Sidman as Personal
25   Date                 Signature          Representative
```

1                    CERTIFICATE OF OATH
2
3     STATE OF FLORIDA
4     COUNTY OF HILLSBOROUGH
5
6                    I, the undersigned authority,
7     certify that ORLINE M. SIDMAN, personally
8     appeared before me and was duly sworn by me.
9                    WITNESS my hand and official
10    seal, this 5th day of July, 2013.
11
12
13

14    PHILIP RYAN, RPR
      NOTARY PUBLIC - STATE OF FLORIDA
15    COMMISSION # DD 988415
      MY COMMISSION EXPIRES:  JUNE 28, 2014
16
17
18
19
20
21
22
23
24
25

1                    CERTIFICATE OF REPORTER
2        STATE OF FLORIDA
3        COUNTY OF HILLSBOROUGH
4                    I, PHILIP RYAN, RPR, certify that I
5        was authorized to and did stenographically
6        report the foregoing deposition; and that the
7        foregoing transcript is a true record of the
8        testimony given by the witness.
9                    I further certify that I am not a
10       relative, employee, attorney, or counsel of any
11       of the parties, nor am I a relative or employee
12       of any of the parties' attorneys or counsel
13       connected with the action, nor am I financially
14       interested in the action.
15
16                   DATED this 5th day of July, 2013.
17
18
19
20
         _____
21       PHILIP RYAN, RPR
22
23
24
25

```
 1              VERITEXT FLORIDA, LLC
          REGISTERED PROFESSIONAL REPORTERS
 2              VIDEOTAPE DEPOSITIONS
      COMPUTER TRANSCRIPTION/LITIGATION SUPPORT
 3              VIDEO TELECONFERENCING
               19 W. FLAGLER STREET
 4                MIAMI, FL 33130
                  (305) 376-8800
 5
 6              LETTER TO DEPONENT
 7    July 5, 2013
 8    Ms. Orline M. Sidman
      c/o
 9    Mark P. Buell, Esquire
      Buell & Elligett, P.A.
10    3003 W. Azeele Street
      Suite 100
11    Tampa, FL 33609
12
      RE: Culbreath et al. vs. Travelers.
13
      Dear Ms. Sidman:
14
      The transcript of your deposition taken in the
15    above case taken on June 25, 2013, is now ready
      for you to complete the reading and signing
16    process.  Please contact our office to schedule
      an appointment to do so.
17
18    Florida law gives you 30 days from the time you
      receive this letter to complete this process.
19    Failure to do so constitutes a waiver of your
      right to read and sign the transcript and note
20    corrections or amendments on the errata sheet.
21    Please govern yourself accordingly.
22    Sincerely,
23
      _____
24    Philip Ryan, RPR
25    CC:  Andrew V. Tramont, Esq., George A. Vaka,
```

1          Esq., James J. Wimsatt, Esq.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**&**

**&** 2:2,11,16 18:5
19:17 20:13 21:2,8
21:15,19 36:5 37:2
47:7 68:9

**0**

**02928** 1:3 64:3
**09** 62:15

**1**

**1** 3:4 14:13,16 20:6
28:2,24 33:16
**10** 3:19 34:21 35:5
60:3,6 62:15,16
**100** 1:15 2:3 68:10
**101** 2:11
**11** 3:21 23:22 35:18
61:24 62:1,16
**1150** 2:17
**11:15** 63:15
**12** 36:3,13 48:10
50:11
**13** 36:12 37:1 59:2
**14** 3:5 37:10
**15** 3:7 37:13
**16** 37:20
**16th** 49:11 50:22
**1700** 2:12
**18** 37:25 38:7
**19** 68:3
**1972** 8:17
**1974** 8:20,23 9:14
**1998** 7:7 9:14

**2**

**2** 3:6 15:16,18 20:5
23:21 26:14 27:4,6
27:22 33:7 34:1
46:11 54:13
**2010** 11:7 13:6 16:7
16:11,16 24:14,17
35:21 36:1 46:13
54:19 55:2 56:13
62:12

**2011** 48:6 49:11,20
49:22 50:22 51:13
53:17,21 54:5 64:16
**2012** 10:20 16:15
59:7
**2013** 1:16 48:10
50:11 59:2,6 64:22
66:10 67:16 68:7,15
**2014** 66:15
**23** 54:19 55:2
**23rd** 16:7,11 24:14
24:17
**24** 1:16 64:16
**24th** 59:7
**25** 68:15
**255** 2:16
**28** 59:2 66:15
**28th** 46:13 59:6
**29** 35:21,25
**295,000** 20:10 21:17
35:21 36:1 42:15
43:1,6 44:11 52:25
**2nd** 51:12

**3**

**3** 3:8 20:5 27:9
31:16,19 41:22
**30** 68:18
**300** 2:7
**3003** 1:14 2:3 68:10
**305** 68:4
**31** 3:8
**3102** 4:20 9:22
**33130** 68:4
**33134** 2:17
**33602** 2:8,12
**33609** 1:15 2:4 4:21
68:11
**376-8800** 68:4
**39** 41:24 42:1,4

**4**

**4** 3:3,9 33:9 46:5,7
57:25 64:15
**400,000** 45:9

**46** 3:10
**49** 3:11

**5**

**5** 3:11 49:13,15,16
50:21 68:7
**50** 3:13,15
**57** 3:17
**58** 3:18
**5th** 66:10 67:16

**6**

**6** 3:12 23:20,21 50:5
50:6 51:3
**6/24/13** 65:1
**60** 3:20
**61** 3:21 10:9
**63** 64:15
**65** 65:1
**69** 9:3

**7**

**7** 3:14 24:6 27:7
50:15,17 55:5 62:12
**74** 9:1
**76** 9:2
**777** 2:7

**8**

**8** 3:16 57:11,17
**84** 8:25
**8:12** 1:3 64:3

**9**

**9** 3:18 48:6 49:19,22
53:17 58:11,15,24
**98** 9:17
**988415** 66:15
**9:30** 1:16
**9th** 53:21 54:5

**a**

**a.m.** 1:16 63:15
**abbreviation** 33:16
**ability** 6:16 13:20
**able** 24:18,20,21
25:6

**absolutely** 44:6 58:3
**accurate** 21:24
39:13 53:20 59:22
**act** 3:13 12:23 48:4
49:19 50:25 51:5,6
51:10,18 52:14
53:22 54:6
**action** 6:7 22:6
23:13 34:15 47:10
67:13,14
**actions** 34:14
**actual** 6:3
**addition** 23:1
**address** 4:14,15,16
**addressed** 59:20
61:18
**administrative** 5:7
**admitting** 3:15 48:8
50:10 55:6
**advised** 24:1
**ago** 10:16,17 45:7
**agreement** 3:7 15:25
16:1 23:23,25 25:14
27:9,16 54:14,15
**agrees** 20:8
**al** 65:1 68:12
**alhambra** 2:16
**allegation** 35:5 37:8
37:21
**allegations** 32:5
37:15 38:3 39:15
**allowing** 60:14
**amended** 3:8,18
31:23 32:2,11,14,23
33:8 39:15 58:12,21
**amendment** 32:6
**amendments** 64:17
68:20
**america** 1:11 32:2
47:14 64:11
**amount** 20:10 35:21
36:1 42:15 52:25
**andrew** 2:15 68:25
**andy** 4:22

**animal** 56:24
**ann** 1:7 42:13 55:24
    64:7
**answer** 5:21 6:8,9
    6:13,17 17:12 18:17
    20:23 22:15 26:4
    36:23 43:13 44:22
    45:25 60:23
**answered** 43:8
**anybody** 17:17,20
    24:22 44:13
**anyway** 55:21
**apparently** 48:5
**appear** 25:6 40:18
**appearances** 2:1
**appeared** 29:24
    66:8
**appears** 33:16 50:21
    61:8
**appellate** 20:12
**appointed** 11:25
    16:22 18:15,20 19:1
    19:5,9
**appointing** 3:11,15
    48:9 49:10 50:10
    55:7
**appointment** 12:4
    12:14 18:20 19:20
    20:1 26:17 68:16
**area** 8:14 9:25 55:18
**areas** 27:23
**arising** 21:3
**articulate** 5:20 6:1
    10:24
**asked** 6:15,17 34:12
    34:17 43:8,18 47:24
    48:15 51:21
**asking** 6:19 27:17
    28:12 43:8,10 45:10
    48:14 49:24
**asserted** 22:10,11
**asserts** 23:2
**assets** 18:25 43:25
    44:5

**assigned** 36:4 37:2
    47:18
**assignee** 20:11
**assignees** 38:19
**assigning** 47:6
**assignment** 3:10,17
    3:18 46:21 57:13,23
    58:12,22
**assignor** 20:8 47:11
**association** 1:6 2:14
    9:25 14:2 64:6
**assume** 6:18 7:15
    14:6 24:24
**assuming** 10:3
    19:11 39:4
**attached** 34:3 51:5
    62:23
**attention** 50:20
**attorney** 2:5,9,13,18
    6:12 15:22 16:7
    17:6,13 19:14,15
    25:15,16 26:2 44:18
    45:24 51:21 60:21
    60:22 67:10
**attorneys** 15:22
    20:13 24:2,10 32:4
    41:3 43:3 44:21
    67:12
**authority** 50:25
    53:22 54:6 66:6
**authorization** 3:13
    48:4 51:4,6,9,18
    52:14
**authorized** 67:5
**avenue** 4:20 9:23
**aware** 11:20 13:25
    14:4 18:23 19:5
    20:16 21:1 22:3,9
    23:4,5,7 27:17 34:7
    34:17 35:4,8,10,13
    35:24 36:19 37:7
    41:7
**azeele** 1:14 2:3
    68:10

**b**

**ba** 7:24 8:9
**back** 8:19 16:5
    33:15 41:23 54:12
**background** 5:15
    60:16
**ball** 45:11
**bank** 45:18
**based** 13:1
**basically** 13:13
**basis** 28:16
**becoming** 29:3
    45:20
**behalf** 1:21 12:24
    16:6 21:14 51:1
    53:23 54:6,18
**believe** 13:7 30:2,10
    57:24
**beneath** 42:4
**beneficiary** 36:15
    36:20 57:3
**benefit** 30:14 44:14
**best** 5:10 6:4,16
    11:17 13:19 25:18
    26:19 50:24 57:5
**better** 9:7
**bills** 13:18 18:25
    21:6,7,12,14
**bit** 5:16 7:18 57:15
**block** 24:6
**blush** 9:10
**bottom** 20:6
**boulevard** 2:7,11
**breach** 35:12 38:14
**breached** 34:22
    35:11 38:9,13
**break** 26:25 27:1
    40:12 48:24
**brought** 4:24 13:23
    14:1,25 17:3,8
    20:18 22:6 23:8
    34:13,15,19 40:19
    41:13 47:21 52:16
    54:7

**bs** 8:2
**buell** 2:2,2 9:7 16:6
    17:11,17,22 18:5,7
    19:17,21 20:13,20
    21:2,8,15,19 22:13
    24:7 26:3,21 27:13
    28:7,15 30:24 31:4
    32:18 35:6,14 36:5
    36:9,22 37:2,17,22
    38:4,15,25 39:10,25
    40:2,25 42:3 43:7
    43:11,21 44:2,17
    45:15 47:1,7,23
    48:2,13,22 49:13,24
    54:1,10,18 55:15
    59:25 60:22 61:20
    62:8,11,20 63:5,12
    68:9,9
**bunch** 43:9 61:1
**bush** 2:11
**business** 4:15 15:11
    33:11

**c**

**c** 68:8
**called** 4:3 32:5
**capacity** 13:16
**caption** 40:23
**care** 13:19 15:22
    19:19,25 41:3,16
    43:3 52:12
**cared** 13:10
**case** 1:3 7:2 12:24
    14:7 25:5,8 32:16
    35:1,1,20 37:12
    40:2 62:23 64:3
    68:15
**casualty** 1:10 32:1
    47:13 64:10
**cause** 1:25 10:12
**causes** 47:10
**caution** 55:11,15
**cc** 68:25
**certificate** 8:22 66:1
    67:1

**certification** 8:11
**certify** 66:7 67:4,9
**charges** 30:16
**chibani** 46:12
**childhood** 10:6 31:5
  39:20,24
**children** 11:13,18
  56:18
**christmas** 59:10
**christmastime**
  16:20
**chronological** 49:8
  50:2
**circle** 2:16
**claim** 22:10,11,24
  23:2,2 57:22 60:14
**claims** 3:10,17,18
  20:18 34:13,19
  46:22 47:8,10 57:13
  58:13,22
**clarify** 48:14
**clarity** 46:16
**clear** 48:17 54:12
  55:17
**client** 21:20 32:1
  33:5 41:6,14 42:25
  43:5 44:11,12,18
**close** 16:20 45:10
**collect** 18:25 47:20
  58:2
**college** 7:15 8:18,20
  8:23
**come** 14:23 26:10
  31:11
**comfortable** 4:15
**commission** 66:15
  66:15
**communicate** 24:18
  24:25
**company** 1:11 32:2
  47:13 64:11
**complain** 29:12
**complaining** 15:7
  29:4,17

**complaint** 3:5,8
  15:3 28:3,6,14
  31:23 32:11,14,15
  32:23 33:1,4,8
  39:16 62:23
**complete** 6:13 68:15
  68:18
**computer** 68:2
**concerning** 17:6
  37:14 38:2 49:2
**concluded** 63:15
**condition** 29:5
**condominium** 9:25
**conformity** 55:25
**connected** 67:13
**consent** 20:9
**consisted** 21:19
**constitutes** 68:19
**contact** 68:16
**contained** 39:8,15
  46:25
**continue** 18:8 36:13
**contract** 34:22
  35:11,12 36:16,20
**conversations** 17:6
  17:13 60:21
**copies** 47:25 49:5
**copy** 26:16 34:3
**coral** 2:17
**corporation** 33:10
**correct** 7:1 10:20
  12:1 21:13 22:2
  24:7 28:23,25 29:1
  33:6 40:4 47:22
  49:12,20 50:12,13
  50:22 51:13,15
  52:21,22 53:1,5
  54:9,19 59:18,21
**corrected** 65:2
**corrections** 64:17
  68:20
**correctly** 20:14 24:3
  33:13 35:2 39:20
  54:22

**costs** 20:12 21:25
  34:25
**counsel** 49:1 67:10
  67:12
**counterclaim** 22:4,5
  22:10,19,20 23:8
**counterplaintiff**
  20:11
**county** 33:12 66:4
  67:3
**couple** 5:19
**courses** 8:8
**court** 1:1,22 5:4,22
  12:14 18:14 20:12
  31:25 33:2,5 53:17
  55:23 64:1
**coverage** 45:19
**culbreath** 1:5 2:14
  9:24 13:23 14:1
  15:1,7 16:2 17:1,3,7
  20:8,19 21:4,21
  22:1,7,11,11,25
  23:3,10,13 25:16
  29:3 30:4,17 34:3,8
  34:13,18,24 35:20
  36:4 38:10,19 47:6
  47:11,18 52:16 54:8
  57:22,23,25 59:1
  61:25 63:2 64:5
  65:1 68:12
**culbreath's** 16:7
**currently** 45:13
**cv** 1:3 64:3

## d

**d** 4:12
**date** 10:15 24:9
  46:18 53:18 62:10
**dated** 24:14 46:12
  48:10 49:11,19
  50:11,21 67:16
**dates** 11:7 16:17
  48:15 54:22 58:25
**day** 16:8 64:22
  66:10 67:16

**days** 68:18
**dd** 66:15
**dear** 68:13
**death** 10:12 11:10
  19:3 44:1
**deceased** 55:24
**december** 16:6,11
  24:17 35:21,25
  46:12 54:19 55:2
  59:7
**decided** 9:16
**declaratory** 3:5
**defend** 30:16 34:12
  34:18,24 38:10
**defendant** 1:12 2:18
  4:24 14:7 20:11
  64:12
**defendant's** 1:24
**defendants** 1:21
**defending** 23:1
**defense** 20:18 21:25
**degrees** 8:6
**demand** 42:14,22
**deponent** 64:13 68:6
**deposition** 1:18,24
  4:25 5:3 23:12 26:2
  26:8 63:15 64:15,16
  67:6 68:14
**depositions** 68:2
**descent** 44:13
**described** 27:18,22
  28:6
**died** 10:15 16:14
  19:6 45:2 59:6
**different** 57:15
**direct** 3:2 4:6 42:3
**directed** 60:22
**discussed** 28:13,21
  58:21
**disrepair** 29:18,24
**district** 1:1,1 31:24
  31:25 64:1,1
**division** 1:2 64:2
**document** 24:1 46:4
  47:24 48:7 51:19

52:5 57:12,19 58:14
59:17,20 62:6
**documents** 26:1,1
49:2 61:1
**doing** 21:12
**duly** 4:4 66:8
**duties** 13:17

**e**

e 2:11 4:12
**eaj** 1:3 64:3
**earlier** 28:3 32:3
47:24 48:15 62:15
**education** 7:17,19
8:15
**effect** 24:1
**eight** 34:1,23
**either** 5:21 12:12
38:23 55:16 62:21
**elementary** 8:15
9:20
**elligett** 2:2 17:18
18:5,7 19:17 20:13
21:2,8,15,20 36:5
37:2 47:8 68:9
**employee** 67:10,11
**employment** 7:6
**entered** 35:19,25
52:25 53:17,21
60:13
**entering** 23:24
**entire** 13:14
**entitled** 15:25 44:16
51:4 57:12 58:12
**entitlements** 47:9
**entry** 20:9
**errata** 65:1 68:20
**esq** 68:25 69:1,1
**esquire** 2:2,6,10,15
68:9
**estate** 1:7 10:5 18:11
19:9 42:13 45:17
49:3 55:12,16 64:7
**et** 65:1 68:12

**eve** 59:10
**evening** 59:11
**exact** 11:7,7 16:17
**exactly** 10:18
**examination** 3:2 4:6
**examined** 4:4
**excuse** 26:3
**executed** 16:4,5,19
19:12 55:25 59:1,5
**execution** 61:9
**executor** 20:1
**exhibit** 3:3,4,6,8,9
3:11,12,14,16,18,19
3:21 14:13 15:16,18
20:5,21 23:21 25:14
26:14 27:4,14,22
28:2,9,10,24 31:19
32:19 34:4 41:22
46:7,25 49:13,14,16
50:4,6,17,21 51:3
54:13 55:5 57:11,17
57:25 58:15,24 60:3
60:6 61:23 62:1
**expires** 66:15
**explain** 5:22,22
13:24
**extent** 45:23 48:14
**extra** 60:11

**f**

**fact** 26:22
**facts** 35:4 37:16
**fail** 6:6
**failed** 40:11
**failure** 68:19
**fair** 6:20 27:25 28:1
30:9 32:16 38:11,16
41:9,18 42:24 43:4
53:3 54:4 56:12
59:16
**familiar** 9:23 58:19
59:19 61:17
**familiarize** 60:15
**family** 12:18

**far** 53:22 54:5,21
57:2,3 59:3
**fast** 39:4
**favor** 20:10 52:25
**february** 49:11
50:21
**fees** 20:12 21:3
**figured** 13:2
**file** 22:19
**filed** 12:13 18:14
22:4,5 28:3 31:24
32:3,15,17 33:1,5
**filled** 54:23
**final** 20:9 35:19,24
52:24
**finally** 50:9
**financially** 67:13
**find** 27:12 44:10,12
44:16
**fine** 4:16 61:15
**finish** 6:8
**finished** 7:22
**finishing** 18:11
**firm** 17:17,20 24:10
**first** 4:3 5:11 7:11
7:12 25:19,21 32:10
32:15 47:5 49:9
50:20 52:2 53:16
55:21 57:23
**five** 53:6
**fl** 1:15 2:4,8,12,17
68:4,11
**flagler** 68:3
**florida** 1:1,7,23 2:9
7:22 8:4,13 31:25
33:10,12,17,20 37:3
42:13 64:1,7 65:1
66:3,14 67:2 68:1
68:18
**focusing** 52:1
**follows** 4:5 65:2
**foolish** 55:13
**foregoing** 64:15,16
67:6,7

**form** 22:13 32:18
35:6,14 36:9,22
37:17,22 38:4,15,25
39:10 40:25 43:7
44:2 47:1,23 54:1
54:10 61:20
**formal** 18:19 19:11
56:7
**forth** 27:16
**fp** 33:10,16 38:19
**freely** 23:25
**friend** 24:24 25:4
29:11
**friends** 10:6 31:5
39:20,24 40:3
**front** 55:9
**fully** 23:25
**further** 63:4 67:9

**g**

**gables** 2:17
**general** 13:12
**generally** 56:15,21
**george** 2:6 68:25
**getting** 8:9 16:25
19:20 44:3
**give** 4:14 44:3
**given** 12:22 67:8
**gives** 68:18
**go** 5:15 8:19 16:4
20:6 25:25,25 27:4
29:21 33:15 41:21
41:23,23,24 48:19
52:2 53:15 54:12
55:19 56:11,16,22
59:12 60:12
**goes** 56:1
**going** 5:19 6:18 9:23
10:10 14:11,12
15:15,24 22:18 27:5
31:15,16,22 44:4,10
44:15,21 45:15 46:3
48:2 50:14 55:11
57:10 58:7,10 60:19
61:4,23 62:20

| | | | |
|---|---|---|---|
| **good** 4:19 9:12 25:4 | **high** 7:18 9:3 | **information** 39:7 | **judge** 48:5,11 |
| **govern** 68:21 | **hillsborough** 33:12 | 45:21,24 | **judgment** 20:9 |
| **grade** 7:10,11,12 | 66:4 67:3 | **injunctive** 3:5 | 35:19,24 36:6 38:21 |
| **graduate** 8:6,18 | **hire** 18:7,10 31:13 | **inquire** 44:7 | 42:14,18 52:24 |
| **graduated** 8:19,23 | **hired** 30:16 | **instruct** 17:11 26:3 | **july** 66:10 67:16 |
| 9:1,1,3 | **hold** 57:10 | 44:21 45:25 60:23 | 68:7 |
| **granting** 3:13 48:3 | **home** 4:16 45:1,4 | **instructions** 12:23 | **june** 1:16 10:17 |
| 49:18 51:4 | **honors** 49:15 | **instrument** 55:23 | 64:16 66:15 68:15 |
| **graziano** 2:11 | **hospital** 13:12 | **insurance** 3:21 4:23 | **justified** 30:4,11 |
| **great** 6:22 48:1,12 | **hours** 21:19 | 34:2,8,22 35:11,12 | |
| **grew** 40:5 | **house** 29:21 | 36:16,21 61:24 63:2 | **k** |
| **gross** 20:10 | **housekeeping** 40:10 | **insured** 34:13,24 | **k** 4:20 |
| **ground** 5:19 | **huh** 8:24 9:18 10:21 | **intend** 44:3 | **keller** 19:19 |
| **group** 2:6 | 11:9 12:11 14:3,10 | **interested** 67:14 | **kelly** 19:16,21,22,25 |
| **growing** 31:6 | 26:18 29:6 30:25 | **interrupt** 6:5,9 | **kennedy** 2:11 |
| **guardian** 3:11 12:1 | 31:7 40:1 45:12 | **invades** 44:18 | **kind** 5:6 47:10 |
| 12:10 13:5,16 16:23 | 48:13 53:8 54:16,20 | **involve** 60:20 | **kinds** 8:8 12:22 |
| 17:16 18:9,15,21,24 | 54:24 55:8,10 56:7 | **involved** 17:1 18:12 | **kirkwood** 1:7 10:3,7 |
| 19:1,5,9,13,20 | 56:19,25 57:4 59:4 | 29:12,13 43:16 | 11:11 14:2 15:1 |
| 21:11 26:17 48:4 | **hum** 5:8 14:18 | **involving** 41:8 | 16:2,6,12 17:3,8,16 |
| 49:10 | **humane** 56:23,24 | **island** 2:7 | 18:4 20:3,11,13,17 |
| **guardianship** 48:7 | | **isles** 1:5 2:14 9:24 | 21:1,8 22:3,5,9 |
| 49:2 | **i** | 13:23 14:1 15:1,7 | 24:11,18 25:16 28:4 |
| **guerra** 2:16 | **idea** 21:23 | 16:2 17:2,3 20:8,19 | 29:2 34:16,19 35:1 |
| **guess** 6:5 18:11 | **identification** 14:17 | 21:4,21 22:1,7 | 35:19,20,25 36:4,6 |
| **guys** 60:4,12 | 15:19 31:20 46:8 | 23:10,13 25:16 34:3 | 36:15,19 38:19,21 |
| | 49:17 50:7,18 57:18 | 34:8,13,18,24 35:20 | 39:21 40:3 42:13 |
| **h** | 58:16 60:7 62:2 | 36:4 38:10 47:11 | 43:19 44:5,14 45:1 |
| **hand** 48:2 49:4 | **identified** 28:11 | 54:8 57:22,23,25 | 46:17 47:7,19 51:1 |
| 64:22 66:9 | **identify** 14:14 20:22 | 59:1 61:25 64:5 | 52:15 53:23 54:6,18 |
| **happen** 44:11 | 28:8 31:18 46:21 | **isles's** 38:20 | 55:1,24 56:3,3 58:1 |
| **happened** 32:6 | **immediately** 11:23 | **isom** 48:5,11 | 64:7 |
| **happy** 6:13 | 25:11,12 | **issued** 34:2,7 36:16 | **kirkwood's** 18:21 |
| **harassing** 45:20 | **impression** 30:11 | 36:21 61:24 63:2 | 21:25 |
| **harbour** 2:7 | **inaccurate** 21:24 | | **knew** 52:8 |
| **hard** 58:24 | **inappropriate** 28:9 | **j** | **know** 6:10,15 10:3,4 |
| **hattiesburg** 7:21 | **incapacitated** 11:3 | **j** 2:10 69:1 | 12:21 15:2,21 17:20 |
| **head** 5:23,24 | 11:23 12:24 16:12 | **james** 2:10 69:1 | 18:3 19:17 21:17 |
| **headed** 9:9 | 16:21 46:17 55:1 | **january** 59:2,5 | 22:19 24:20,23 |
| **hear** 33:23 | **include** 64:17 | 62:12 | 27:11 29:20 30:24 |
| **heard** 15:6 61:14 | **indemnify** 34:12,18 | **job** 7:8 | 31:4,12 33:20,22 |
| **heirs** 43:19 | 34:24 38:10 | **jog** 5:18 | 39:3 40:13,16,24 |
| **hereto** 34:4 64:17 | **index** 3:1,3 | **joint** 3:7 15:25 | 41:2 42:18,21 43:2 |
| **hey** 31:12 | **indicated** 20:22 | 25:14 54:13 | 43:5 44:4,19 45:20 |
| | 30:23 | | 51:25 52:10,10 |

53:22 54:5 56:17
57:2,3 60:25 61:6,7
61:11,12
**knowledge** 5:10
11:16,17 25:18
26:19 27:7,23 28:6
28:21 36:7 37:14,21
38:2,2,12,22 39:7
39:14 40:18 46:23
47:2,18 50:25 52:20
53:4,9,12 58:4,6,20
61:18
**known** 17:22,24
39:24
**knows** 44:16 59:23

**l**

**l** 4:11,12,20
**large** 1:23 65:1
**latitude** 44:4
**law** 2:6 17:17,20
55:25 68:18
**lawn** 29:5,24 30:7
**lawsuit** 4:24 13:22
13:25 14:25 17:2,7
30:3,10 32:7 40:18
40:21 41:10,13
47:21 52:15,16
53:24,24 54:7 58:2
58:8 60:16
**lawyer** 19:9,10
30:22 31:12 41:16
55:12,16
**lawyerly** 55:14
**lawyers** 30:16 32:15
41:16 52:11
**lay** 28:15 43:8,11
**lead** 30:2
**legal** 17:23 21:3
24:1 43:9
**legality** 41:8
**letter** 62:11 68:6,18
**letting** 52:11
**level** 9:20

**lewis** 35:1 37:11
**liability** 33:10
**lifelong** 13:2 24:24
**limited** 33:10
**line** 20:20 44:13
45:16 65:2
**list** 59:24
**listen** 15:6
**listening** 29:11
**litigation** 21:3,20
22:1 68:2
**little** 5:15 7:17 57:15
**lived** 9:22
**living** 57:6,8
**llc** 1:7 33:17,21 37:4
42:14 64:7 68:1
**long** 39:25
**look** 9:1 14:13 15:17
23:20 26:14 27:3
28:4 31:17 33:7,25
37:10,13,25 40:23
46:5,20 47:5 51:3
55:5 57:14 58:12
60:1,4 61:1
**looked** 51:24 57:24
**looking** 40:22
**looks** 49:20
**lost** 39:5

**m**

**m** 1:6,18 4:2,12 64:6
64:20 65:24 66:7
68:8
**mail** 15:21
**making** 9:10
**march** 48:6,10
49:19,21,22 50:11
51:12 53:17,21 54:5
**mark** 2:2 6:5 54:14
59:22 68:9
**marked** 14:12,16
15:16,18 31:16,19
46:4,7,20 49:16
50:6,17 57:11,17,24
58:11,15 60:2,6

61:23 62:1
**married** 11:11,15
56:20
**matter** 27:16,21
28:13,21 58:21
59:20 61:18
**matters** 27:18
**mean** 8:25 44:3
45:17 48:16
**meaning** 11:1 28:20
**means** 42:21
**meetings** 23:18
**members** 12:18
**memory** 5:18
**mention** 40:11
**mentioned** 6:24
39:19
**mentions** 34:15
**messy** 30:7
**met** 17:17
**miami** 68:4
**middle** 1:1 31:25
64:1
**mind** 48:13
**minute** 8:19 14:20
28:5 58:18
**minutes** 48:20
**mississippi** 7:21,21
**modify** 32:4
**moment** 27:6
**money** 20:17 44:15
45:13,18 56:16,22
58:7
**monies** 56:11
**months** 45:7
**moved** 13:15

**n**

**n** 4:11,12,12,20
**name** 4:8,22
**named** 46:11
**nature** 47:11
**near** 55:19
**need** 4:16 27:11

**needed** 26:10
**needs** 13:19
**negotiations** 17:1
**never** 11:18 14:19
15:11 23:12,15
55:19 61:14 62:3,4
62:6
**nine** 34:10 41:25
42:2
**nod** 5:23
**nodded** 32:8
**notary** 1:22 64:25
66:14
**note** 3:20 60:8 61:9
61:16,19 68:19
**notice** 1:24 62:14
**notified** 26:10
**number** 21:24 23:22
28:24 39:3 50:15
**nunez** 2:16

**o**

**o** 4:11,12,20 68:8
**oaklyn** 4:20 9:22
**oath** 5:11 66:1
**object** 17:11 20:20
22:13 28:7,16 32:18
35:6,14 36:9,22
37:17,22 38:4,15,25
39:10 40:25 43:7
44:2 45:15 47:1,23
54:1,10 61:20
**obtain** 8:16 26:20
**occasion** 29:21
**october** 10:18,20
16:15
**office** 68:16
**official** 64:22 66:9
**oh** 9:4 10:14 49:25
52:4 60:11
**okay** 4:11 5:17,25
6:11,22 7:2,12 8:3
8:21 9:19 10:2,14
10:20 11:5,8,10
13:5,16,21,21 14:11

14:24 15:8,10,15
16:3 18:13 19:19
22:3,22 24:5 25:18
26:7,14 29:9,23
31:3,6,10,10 32:20
33:20 40:10 41:21
43:4,18 45:13 46:1
46:3 48:6,23 52:4
55:18 56:15 59:5
63:14
**old**  10:7
**once**  41:22
**opening**  33:15
**order**  3:11,13,15
17:2 48:3,8 49:8,9
49:18 50:2,9 51:4
53:21 55:6 60:13
**original**  33:1
**orline**  1:6,18 2:5 4:2
4:10 42:10 64:6,20
65:24 66:7 68:8
**owners**  1:5 2:14
14:1 64:5

**p**

**p**  2:2 68:9
**p.a.**  2:2,11,16 68:9
**pa**  20:13 36:5 37:2
**page**  3:2 16:5 20:5
22:23 23:20,21 24:5
24:6 27:9 33:7,16
34:1 41:23 46:11
52:2,3 53:16 54:17
61:10 64:13 65:2
**pages**  27:6 39:3
64:15
**paid**  13:18 21:2,7
**papers**  18:20 19:12
**paragraph**  20:6
23:22 27:4,5 33:9
33:15,25 34:10,10
34:21,23 35:5,18
36:3,12,13 37:1,10
37:13,20,25 38:7,18
41:24 42:1,4,5 47:5

52:13,23 53:6
**paragraphs**  39:8
**pardon**  12:6 22:15
35:16
**park**  45:11
**particular**  8:13
**parties**  67:11,12
**parts**  27:8
**party**  23:23 32:7
36:15,20 52:16
**passed**  10:8 13:14
20:3 56:11
**patricia**  61:6
**pay**  18:24 21:12,14
**payable**  20:12
**people**  18:1 24:18
24:21
**permanent**  3:5
**personal**  1:6 3:15
19:2 27:23 28:20
38:2 39:7,14 41:1,5
41:11 42:12 46:23
48:9 50:10 55:7
61:17 64:6
**personally**  66:7
**pete**  19:16
**petition**  3:13 48:3
49:19 51:4,5,9,18
52:14 53:7
**philip**  1:22 66:14
67:4,21 68:24
**phyllis**  1:7 24:10
42:13 55:24 64:7
**place**  33:11
**placed**  13:18
**plaintiff**  2:5,9,13
20:8 40:21 43:10,11
**plaintiffs**  1:8 42:10
64:8
**platter**  2:11
**please**  4:8,9 6:10,15
14:15 15:17 68:16
68:21
**plenary**  3:11 48:4
49:10

**point**  9:12 10:4
**policies**  62:19,22
**policy**  3:21 34:2,8
38:9,13,14 61:24
62:9,12,13,15 63:1
**policyholders**  1:7
2:9 33:17,21 37:4
42:14 64:7
**post**  7:18 8:6
**prematurely**  11:8
**preparation**  26:8
**presented**  55:23
**preserved**  9:8
**presumably**  45:23
**pretty**  16:20
**prevail**  58:8
**previously**  27:13
**principal**  33:11
**prior**  17:18,21 26:2
29:2 31:1 50:24
51:17 53:20 54:4
**privilege**  26:5 44:19
**probably**  6:5,6
43:22
**probate**  3:15 48:9
50:10 55:6
**proceed**  36:5 37:3
38:20 60:14
**proceeding**  5:7
18:13 19:12 33:2
**proceedings**  49:3
**proceeds**  47:9,20
**process**  68:16,18
**production**  62:18
**profession**  7:13
**professional**  68:1
**promissory**  3:20
60:8 61:9,16,19
**prompted**  12:17
**property**  1:5 2:14
14:1 64:5
**provided**  49:1 62:13
**public**  1:22 64:25
66:14

**pull**  54:14
**pursuant**  1:23 57:23
**put**  50:16

**q**

**question**  6:14,17
19:4,7 26:4 28:10
39:9,16,18 43:14
44:22 56:1
**questioning**  20:21
45:16
**questions**  5:20
27:10 43:9 44:23
55:12,14 60:20 63:5
63:6
**quick**  26:25
**quickly**  42:3 61:16
**quite**  11:8
**quizzically**  40:22
**quote**  47:8

**r**

**r**  4:11,12
**ral**  1:3 64:3
**rarely**  29:22
**read**  14:20 20:14
24:3 27:6,6 33:13
35:2 37:13,25 39:4
39:5 46:22 48:20
51:17 52:7 58:18,24
61:15 63:12 64:15
65:2 68:19
**reading**  51:22 52:8
63:11 68:15
**ready**  68:15
**realize**  41:5,9,10
42:24
**really**  14:18 15:5
41:7 44:5
**reason**  30:23 40:12
56:17 60:4
**recall**  10:15 12:4
16:25 17:5 18:13,19
18:22 25:13 29:10
29:14 30:5 33:4
39:19 51:19,22 52:8

56:2,5,9,15,21
**receive** 47:12 68:18
**recitals** 27:8,15
**recognize** 14:22
　40:20 57:14
**recollection** 14:25
　55:1 57:5
**recommendation**
　30:22
**record** 4:9 5:23
　31:18 46:17,21
　59:12,14 62:9 67:7
**recover** 58:7
**referenced** 21:18
　34:23
**refusing** 34:23 38:9
**regard** 6:6 29:10
　34:25 36:6 38:21
　56:9
**regarding** 20:21
　28:10 32:18
**registered** 68:1
**relationship** 13:2
**relative** 67:10,11
**relevance** 44:6
　45:17
**relevant** 44:9 45:22
**relief** 3:5,5
**remained** 11:2
**remember** 5:8,14
　10:18,24 11:7 15:2
　16:17 24:23
**rephrase** 6:16 22:8
**report** 67:6
**reporter** 1:22 5:23
　67:1
**reporters** 68:1
**represent** 4:23 18:8
　22:18 31:22 58:25
**representations**
　46:24
**representative** 1:6
　3:15 10:5 13:22
　19:2 41:2,6,11
　42:12 48:10 50:11

55:7 64:6
**represented** 18:5
**representing** 21:25
**represents** 23:23
**respect** 17:12 21:2
　24:21 27:21 43:25
　53:23,24 54:7 60:23
**respective** 24:2
**respond** 25:6
**responding** 4:4
**response** 6:3 22:6
　62:14
**rest** 39:6
**retire** 9:16
**review** 26:1
**reviewed** 25:13 62:6
**reviewing** 33:4
**rice** 2:11
**right** 6:2 7:5 9:16
　10:22 12:9 14:6
　15:4,10,24 16:25
　17:5 21:23 22:25
　26:22 27:12 31:10
　31:22 32:9,13,25
　33:7,25 35:10 36:5
　37:2 39:23 41:5,18
　41:21 42:4,21 44:24
　45:6 46:10,16 47:12
　47:19,19 50:14
　51:22 52:13,23 53:4
　53:15 56:8 58:1,2
　59:3,9 62:24 63:11
　68:19
**rights** 38:20 47:8
**rodriguez** 2:16
**role** 14:6
**rpr** 1:22 66:14 67:4
　67:21 68:24
**ruined** 59:11
**rules** 5:19 40:11
**ryan** 1:22 66:14
　67:4,21 68:24

**s**
**s** 2:7 4:12
**saade** 46:12
**saw** 59:9
**says** 20:7 23:21,22
　24:9 32:2 33:9 34:1
　34:11,21 35:18 36:3
　36:12,14 37:1 38:8
　38:18 42:9 55:22
　62:12
**scalini** 61:12
**scalise** 61:6,12
**schedule** 68:16
**school** 7:9,18 9:3,14
　9:20 40:9
**seal** 64:22 66:10
**second** 3:8 31:23
　32:2,11,14,23 33:8
　38:7 39:15 52:2
　57:11 59:13
**see** 16:5,9,19 22:23
　24:6,12,15 29:24
　32:7,8,9 33:8,18
　34:5 35:22 36:17
　37:5 42:4,7,9,16
　43:15 46:10,14
　47:15 49:4,5 51:7
　52:1,13,18 53:2,8
　53:16,18 54:17 56:5
　59:2 61:2,10
**seeing** 18:19 51:19
　56:2,5,9
**seeking** 44:12 45:21
**seen** 6:7 14:19,23
　15:21 21:6 25:19,21
　27:14 32:10,17,22
　32:25 46:6 51:20
　57:19 58:14 59:17
　60:8 62:3 63:1
**sell** 45:8
**send** 62:17,18
**sent** 21:7
**sentence** 38:7 55:21

**separate** 34:14
**september** 24:14
**serving** 10:4
**set** 27:16
**settle** 17:2
**settlement** 16:1 17:7
　23:17 54:15
**shake** 5:24
**sheet** 65:1 68:20
**short** 27:1 48:24
**shortly** 13:8 25:8
**show** 14:11 15:15
　31:15 46:3 57:10
　58:10
**showed** 26:17 57:16
**shown** 23:15,17
**siblings** 57:6
**sick** 15:9
**sidman** 1:6,18 2:5
　3:4,6,8,9,11,12,14
　3:16,18,19,21 4:2
　4:10,13,22 6:24
　14:12,12,14,16
　15:16,18 24:3 27:3
　30:1 31:11,15,16,19
　38:12 42:10 46:4,4
　46:7 49:1,16 50:6
　50:17 57:6,17,21
　58:11,15 59:16 60:2
　60:6,13 62:1 63:8
　64:6,20 65:24 66:7
　68:8,13
**sign** 51:21 63:13
　68:19
**signature** 24:6
　46:11 64:13
**signed** 25:15 48:5
　51:10,12,20 52:7,11
　53:10,17 54:18
**signing** 52:9 63:11
　68:15
**similar** 44:22
**simply** 32:13
**sincerely** 68:22

sitting 45:14
situation 17:23
skill 39:5
skip 37:11
socially 17:24 18:2
society 56:23,24
sold 45:4,6
sorry 19:22 60:5,11
sort 19:11
sought 12:3 34:25
sound 55:12,13
south 7:22 8:4
southern 7:20
spent 20:17 21:19
spoken 44:20
stamp 50:16
stamped 53:18
start 6:9 27:10
started 6:22
starts 27:9 42:5
state 1:23 4:8 18:14
  65:1 66:3,14 67:2
statements 46:24
states 1:1 31:24 64:1
status 23:7
statutory 62:14
stenographically
  67:5
stipulate 9:7
stipulation 3:7
  15:25 25:14 54:13
street 1:14 2:3 68:3
  68:10
strike 22:4 36:12
stroke 10:13 11:2,5
  11:6,22 13:8,11
  16:15 25:9 56:13
stupid 55:13
subject 8:14 27:16
  27:18,21 28:13,21
  58:20 59:19 61:18
subscribe 64:16
subscription 64:16
subsequent 8:9

sue 47:19 58:1
sued 30:19 41:6
sues 22:25
suing 42:25 43:5
suit 2:7 44:7 45:22
suite 1:15 2:3,12,17
  68:10
supplemental 62:18
support 35:4 37:16
  68:2
sure 6:4 8:25 48:22
  62:8
surety 1:10 32:2
  47:13 64:10
sworn 4:4 66:8

**t**

take 13:21 14:13,20
  15:17,22 23:20
  26:14,24 27:3,6
  28:4 31:17 33:7,25
  37:10,13,25 40:12
  40:23 41:3,16 43:3
  46:5,20 48:20 51:3
  52:12 55:5 57:14
  58:11,18 60:1,3
taken 1:21 4:25 8:8
  23:13 64:15 68:14
  68:15
talk 7:17 30:15
talked 29:3
talking 29:10,16
talks 47:6 52:14,24
tampa 1:2,15 2:4,8
  2:12 4:21 7:23 9:23
  13:12 18:3,14 31:8
  32:1 33:11 64:2
  68:11
tasked 21:11
taught 7:9 9:14
teach 7:10
teacher 39:4
teaching 8:11 9:19
teleconferencing
  68:3

tell 6:5 7:18 10:2,11
  15:24 18:4 19:8
  22:22 26:7 27:7
  28:5 29:9 30:1,2
  31:17 33:20 37:14
  38:1 39:6 40:15
  44:7 46:23 51:18
  52:7 56:8 57:14,21
  58:13,19 61:16
telling 15:2 47:17
terms 21:24
testified 4:5 5:4,6
  27:13 28:8 56:18
testify 23:15
testifying 5:11
testimony 14:24
  58:3 67:8
thank 4:13 40:14
  48:12,23 55:4 63:8
  63:9
thing 53:6
things 21:11
think 5:9,14 6:24
  10:19 16:13 22:21
  22:22 28:9 30:6
  39:23 44:9,15,17,18
  45:20 47:25 48:6
  49:9 59:6
third 23:21 36:15,20
thirty 42:2
three 40:5 45:7
  52:23
time 5:11 7:3 11:1
  11:10 12:20 13:14
  16:21,23 25:2,2,19
  25:21 32:4,4,10
  39:25 40:11 43:25
  50:24 52:9 68:18
title 57:16
today 25:24 26:2,9
  32:23 33:23 40:20
  53:13
told 16:14
top 62:11

total 20:10
touched 28:2
tramont 2:15,16 3:3
  4:7,22 9:11 17:14
  19:22,24 20:23,25
  22:14,17 26:6,24
  27:2,15,20 28:12,19
  32:20,21 35:7,15
  36:11,25 37:19,24
  38:6,17 39:2,12
  41:4 43:10,13,17,22
  43:23 44:9,24,25
  46:2 47:4 48:1,12
  48:19,23,25 49:14
  50:1,4,8,14,19 54:3
  54:11 55:18,20
  59:12,15,22 60:1
  61:22 62:10,17,24
  62:25 63:4,8,10,14
  68:25
transcript 67:7
  68:14,19
transcription 64:15
  68:2
transferred 57:25
transferring 47:7
travelers 1:10 4:23
  33:2 34:2,7,12,17
  34:22 35:11 36:6,16
  36:21 37:3 38:9,13
  38:20 40:19 41:6,14
  42:15 47:13,19,20
  47:21 53:25 57:22
  58:1,2,7 60:15
  61:25 62:13 63:2
  64:10 65:1 68:12
travellers 32:1
trial 20:12
tried 50:1
true 37:15 67:7
try 6:7 24:25
turn 20:5 24:5 50:20
turning 41:22
two 34:14 52:13

| | |
|---|---|
| **type** 19:10 | **waive** 63:10 |
| **u** | **waiver** 68:19 |
| **uh** 8:24 9:18 10:21 11:9 12:11 14:3,10 26:18 29:6 30:25 31:7 40:1 45:12 48:13 53:8 54:16,20 54:24 55:8,10 56:7 56:19,25 57:4 59:4 | **want** 5:21 27:10 40:11,23 44:7,10,12 60:25 |
| **undersigned** 66:6 | **wanted** 13:3 26:16 56:11,16,21 |
| **understand** 6:14 12:5,7 19:7 24:21 29:13 41:15,19 54:21 | **way** 11:3 30:2 36:7 38:12 40:8 44:19 47:24 |
| **understanding** 54:25 | **week** 62:20 |
| **understood** 6:18 | **went** 7:20 |
| **unfortunately** 25:5 | **west** 4:20 9:22 |
| **uninformed** 10:11 | **whatsoever** 44:6 47:10 |
| **united** 1:1 31:24 64:1 | **wherefore** 42:6,10 |
| **university** 7:20,22 8:1,3 | **wide** 44:3 |
| **unjustified** 30:4 | **wimsatt** 2:10 63:6 69:1 |
| **unsure** 5:13 | **witness** 4:3 9:10 19:23 20:24 27:19 28:16,18 32:8 36:10 36:24 37:18,23 38:5 38:16 39:1,11 41:1 43:9,12,15 46:1 47:2 49:25 50:3 54:2 61:8,21 63:9 64:22 66:9 67:8 |
| **upset** 15:6 29:17 | |
| **usual** 55:14 | |
| **v** | |
| **v** 2:15 68:25 | **wondering** 12:14 |
| **vaka** 2:6,6 63:7 68:25 | **word** 42:5 |
| **veritext** 68:1 | **work** 4:17 6:25 19:10 57:9 |
| **video** 68:3 | **wow** 9:6 |
| **videotape** 68:2 | **written** 16:18 |
| **violating** 26:4 | **wrote** 56:10,12 |
| **visited** 13:19 | **y** |
| **voluntarily** 23:25 | **y** 4:20 |
| **vs** 1:9 64:9 65:1 68:12 | **yard** 15:3,7 29:18 |
| **w** | **yeah** 9:5 40:25 43:11 48:2 59:25 |
| **w** 1:14 2:3 68:3,10 | **year** 10:16,17 59:3 |
| **wait** 8:19 17:10 | |