UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CULBREATH ISLES PROPERTY
OWNERS ASSOCIATION, INC. and
ORLINE M. SIDMAN, as plenary guardian
and on behalf of Phyllis Ann Kirkwood, and
FLORIDA POLICYHOLDERS, LLC,

      Plaintiffs,

v.
                             Case Number:  8:12-cv-02928-RAL-EAJ

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA,

      Defendant.
_____/

**REPLY TO DEFENDANT TRAVELERS' RESPONSE TO PLAINTIFF
CULBREATH ISLES PROPERTY OWNERS' ASSOCIATION'S
MOTION FOR SUMMARY JUDGMENT**

      Plaintiff, Culbreath Isles Property Owners Association, Inc. ("Culbreath") hereby files

this reply in accordance with this Court's May 13, 2015, Order permitting the same and requests

entry of final judgment against Travelers Casualty and Surety Company of America

("Travelers") for the reasons set forth below:

**I.      Introduction**

      The 11th Circuit's opinion confirmed Travelers had no basis to deny coverage in the

underlying suit.  Legally and factually, Culbreath is entitled to judgment in its favor.  All of the

defenses to coverage raised in both Travelers' Response to Culbreath's Motion for Summary

Judgment and Travelers' Motion for Summary Judgment have been either decided in favor of

Culbreath by the Eleventh Circuit Court of Appeals or waived.   This Court has permitted the

parties to serve replies to the respective Responses to Motions for Summary Judgment. (Doc.

107). Culbreath writes to further explain why it is entitled to summary judgment in its favor given the recent finding of coverage by the Eleventh Circuit Court of Appeals.

## II.    Pertinent Facts

In the underlying action, Culbreath sued two property owners, the Lewises and Ms. Kirkwood, in state court for violations of restrictive covenants.  The legal issues in the Kirkwood and Lewis matters were substantively the same, and the actions were eventually consolidated into one state court action. (Doc 61-3). Both Ms. Kirkwood and the Lewises made claims for attorney's fees associated with the respective lawsuits.  Kirkwood also brought a counterclaim against Culbreath for slander of title.  Travelers issued claims made insurance policies to Culbreath. (Doc. 61-4). Culbreath initially provided notice to Travelers of Kirkwood's claim for attorneys' fees and counterclaim for slander of title on July 16, 2009. (Doc. 61-9).  Travelers, through its specifically designated corporate representative, Melissa Morin, admitted in deposition Travelers received notice of the Kirkwood matter as defined by its policy. (Doc. 61-29). Travelers assigned counsel to defend the Kirkwood counterclaim, the defense of which began following consolidation of the Kirkwood and Lewis cases.   Following consolidation of the actions, and following Travelers having assigned counsel to defend the Kirkwood counterclaim, Kirkwood and Lewis both prevailed in a summary judgment hearing against Culbreath. (Doc. 61-11). Culbreath appealed this ruling.  On July 20, 2010, Culbreath's counsel promptly informed Travelers the Court had determined both Kirkwood and the Lewises were prevailing parties and that both Kirkwood and the Lewises may be entitled to attorney's fees. Travelers was also informed the Court had yet to rule on the issue of attorney's fee entitlement. (Doc. 61-12). In that same correspondence, counsel for Culbreath requested a determination from Travelers as to whether there was coverage under the policy for any such awards for fees should they be imposed (Doc. 61-12). Travelers' designated Corporate Representative, Melissa

Morin, admitted Travelers had actual notice of the demand for attorneys' fees being made by the Lewises before there was an actual award of attorneys' fees granted to the Lewises. (Doc. 61-18).

On August 10, 2010, Travelers' designated Corporate Representative, Melissa Morin, received notice, from counsel it had retained to defend Culbreath against the Kirkwood counterclaim, a hearing was held on entitlement to fees and costs, and that the Court determined both Kirkwood and the Lewises were entitled to recovery of fees and costs. Travelers' attorney, Mr. Lofaro, was in attendance at that hearing, and in the August 10, 2010, correspondence he informed Travelers' Corporate Representative an evidentiary hearing would take place in November of 2010 to determine the amount of fees. (Doc. 61-17). Mr. Lofaro later informed Travelers, on August 13, 2010, the evidentiary hearing to set the amount of attorneys' fees in the Lewis matter had been set for October 14, 2010.  (Doc. 61-19).  The hearing was rescheduled to January 11, 2011, but on October 27, 2010, Morin sent a letter to the Culbreath's Board of Directors denying any coverage in the Lewis matter and directing the Board to take "whatever steps [were] appropriate to ensure that their interests [were] protected in this matter."  (Doc. 61-21).

A full evidentiary hearing was held in the trial court in the Lewis matter, and the Court awarded the Lewises fees and costs in the amount of $101,442.43. (Doc. 61-25).  The court reserved jurisdiction to award the Lewises further fees and costs they had incurred, pending resolution of the appeal filed by Culbreath.  Faced with the prospect of ever increasing fees, and in an effort to mitigate its damages, Culbreath entered into a Settlement Agreement with the Lewises, whereby Culbreath relinquished its right to pursue its viable appeal in exchange for an agreement to pay the Lewises the additional $110,557.57 in fees and costs they had incurred in

defending the appeal, for a total liability of $212,417.00 against Culbreath for fees and costs (including interest due on the original judgment). (Doc. 61-25).

Importantly, the October 27, 2010 denial letter drafted by Travelers denied coverage for the fees incurred in the Lewis claim on the following ground:

> It is our understanding the Association elected to file suit against [the Lewises]. The basis of said lawsuit arises out of Defendants' alleged failure to comply with the CC&Rs. The Defendants filed a responsive pleading but at no time filed a counterclaim or other affirmative action against the Association. On/about June 11, 2010 Defendants prevailed on a Motion for Summary Judgment and subsequently filed a Motion for prevailing party attorney's fees and costs. On/about August 11, 2010 the Court granted Defendants' Motion. The only issue remaining is the amount of fees the Court will award. Culbreath Isles would like Travelers to satisfy the fee award in favor of Defendants. In light of the information provided above, we refer you to the Policy's Insuring Agreement (A), as modified by the Non-Profit Change Endorsement CIRI 70004, which provides in pertinent part that:
>
> > Travelers shall pay on behalf of the Insureds Loss up to the available maximum aggregate Limit of Liability set forth on Item 3 of the Declarations which is incurred by the Insureds as a result of any <u>Claim</u> first made against the Insureds during the Policy Period or the Discovery Period, if purchased for a <u>Wrongful Act</u>.
>
> Based on the information available to Travelers, there is no Wrongful Act alleged against the Association. <u>Neither the Motion for Summary Judgment nor the Motion for Attorney's Fees constitutes a Claim within the meaning of the Policy. As such, there is no indemnification or defense coverage available for this matter.</u> (Doc. 61-21). (Emphasis added).

The denial letter did not inform Culbreath that coverage was denied due to any alleged late notice or lack of notice. The denial letter did not inform Culbreath that coverage was denied due to any misrepresentations made by Culbreath in a renewal application.

Culbreath was forced to initiate this action to obtain a determination of coverage for the fees and costs incurred in the Lewis matter. Travelers filed its initial Answer and Affirmative Defenses on April 11, 2013. In an affirmative defense Travelers raised <u>for the first time</u> the defense to coverage of lack of notice of the Lewis claim. At no time prior to the time of filing the Answer and Affirmative Defenses had Travelers asserted that coverage was denied due to

4

Culbreath's failure to notify Travelers of the Lewis claim.  Travelers did not in its Answer and Affirmative Defenses raise the defense to coverage of any alleged misrepresentation in any renewal application.  It was not until Travelers filed its Second Amended Answer and Affirmative Defenses on May 15, 2013, that it raised for the first time the defense of misrepresentation as a ground upon which Travelers was denying coverage for the Lewis claim. In fact, Melissa Morin, Travelers' designated Corporate Representative who is also the author of the denial of coverage letter, testified she did not even examine the issue until shortly before her first deposition on April 26, 2013. (Doc. 61-47).

### III.     Travelers' Arguments In Opposition to Summary Judgment

Travelers asserted four arguments in its Response in Opposition to Culbreath's Motion for Summary Judgment filed on October 28, 2013.  First, Travelers asserts that no insured losses resulted from the fee claims first made against Culbreath.  This issue has been decided in Culbreath's favor by the Eleventh Circuit Court of Appeals, which expressly held the lawsuits by Culbreath qualified as wrongful acts under the Policy, and the losses attributable thereto, the judgments against Culbreath for the homeowners' attorneys' fees, must be covered under the Policy.  (Doc. 95).  Travelers' second argument is that Travelers had no obligation to "defend" against the "fee claims" in the underlying action.  Again, the Eleventh Circuit expressly rejected this argument by holding that the subject policy and Travelers' own admissions regarding the policy language made it impossible for Travelers' to form a plausible argument the fee claims were not covered under the subject policy. (Doc. 95).

Travelers' next two arguments allege coverage for the Lewis fees is abrogated because 1. Culbreath did not properly notify Travelers of the Lewis claim and, 2. Because the proper applicable policy is the 2010 – 2011 policy, and this policy is void due to misrepresentations

made on the 2010 renewal application.  Both of these arguments are wholly without merit, as more fully discussed below.

However, perhaps more importantly, both of these arguments were raised by Travelers in briefs and oral argument before the Eleventh Circuit Court of Appeals, and the Eleventh Circuit did not find either of these arguments meritorious, ultimately holding the subject policy <u>does</u> provide coverage for Culbreath's obligation to pay the Lewises' attorney's fees, reversing the lower court's Order and remanding it back to this Court for further proceedings consistent with the Eleventh Circuit's Order.

It is axiomatic that on remand for further proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal. <u>Bankers Trust Co. v. Bethlehem Steel Corp.</u>, 761 F.2d 943, 949 (3d Cir.1985)(citing <u>Briggs v. Pennsylvania R. Co.</u>, 334 U.S. 304, 306 (1948); <u>Seese v. Volkswagenwerk, A.G.</u>, 679 F.2d 336, 337 (3d Cir. 1982); <u>Noel v. United Aircraft Corp.</u>, 359 F.2d 671, 674 (3d Cir. 1966); <u>Matter of Beverly Hills Bancorp</u>, 752 F.2d 1334, 1337 (9th Cir. 1984); <u>Stevens v. F/V Bonnie Doon</u>, 731 F.2d 1433, 1435 (9th Cir. 1984).  A trial court must implement both the letter and **spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces**. <u>Piambino v. Bailey</u>, 757 F.2d 1112 (11th Cir. 1985)(emphasis added). See also <u>Wheeler v. City of Pleasant Grove</u>, 746 F.2d 1437, 1440 n.2 (11th Cir. 1984). "Where the reviewing court in its mandate prescribes that the court shall proceed in accordance with the opinion of the reviewing court, such pronouncement operates to make the opinion a part of the mandate as completely as though the opinion had been set out at length." <u>Noel</u>, 359 F.2d at 674.  In the absence of specific directions, the question as to what further proceedings can be had consistent with the opinion of the appellate court must be determined from the nature of the case and the pertinent statutory provisions. <u>Bankers Trust Co.</u>,

761 F.2d at 950. The mandate and the opinion must be considered together in their entirety **with particular reference to the issues considered**. Id.(citing <u>United States v. Iriarte</u>, 166 F.2d 800, 803 (1st Cir. 1948)(emphasis added). Although the trial court is free to address, as a matter of first impression, those issues not disposed of on appeal, it is bound to follow the appellate court's holdings, both expressed and implied. <u>Dorsey v. Continental Casualty Co.</u>, 730 F.2d 675, 678, 679 (11th Cir.1984). Additionally, an issue must be raised on appeal or it will otherwise be considered abandoned. See <u>Hamilton v. Southland Christian School</u>, 680 F.3d 1316, 1319 (11th Cir. 2012)(holding under Eleventh Circuit case law, a party seeking to raise a claim or issue on appeal must plainly and prominently so indicate. Otherwise, the issue will be considered abandoned. An appellee's failure to raise an affirmative defense on appeal waives any right to claim such a defense); <u>Johnson v. Wainright</u>, 806 F.2d 1479, 1481, n.2 (11th Cir. 1986)(holding that an appellee's failure to raise an affirmative defense on appeal "waives any right to claim such a defense").

In this circumstance, Travelers raised the issues of late notice and misrepresentation on appeal before the Eleventh Circuit both in its briefs and during oral argument. If the Eleventh Circuit Court of Appeals found either of these arguments credible, the Court could have found that coverage does not exist for Culbreath related to the Lewis claims. That is not how the Eleventh Circuit ruled. It determined coverage <u>does</u> exist for the Lewis claims despite all of the arguments raised by Travelers attempting to avoid coverage. Therefore, these issues have been determined, and since these were issues the Eleventh Circuit considered, implicit in the Court's Order is the disposal of these arguments as well. This Court is bound to follow the Eleventh Circuit's holdings and enter an Order complying with the Eleventh Circuit's ruling that coverage does exist for Culbreath for the Lewis fee claims. To the extent Travelers argues these issues were not raised in the appeal, they are therefore waived. However, in an effort to ensure this

Court is fully apprised on the meritless nature of both Travelers' late notice defense and misrepresentation defense to coverage, Culbreath's position on these issues is outlined below.

**A.   <u>Late Notice</u>**

Travelers argues Culbreath is not entitled to entry of final summary judgment in its favor determining coverage exists for the Lewis Judgment because Culbreath breached the notice provision of the subject policy and failed to timely notify Travelers of the Lewis claim.  This argument is meritless in light of the facts and circumstances surrounding the Kirkwood and Lewis claims and the admissions made by Travelers as to its actual knowledge of both of these claims.

Travelers admits it received requisite notice of the Kirkwood claim as defined by the Policy.  Culbreath provided written notice of the claim on July 16, 2009, (Doc. 61-9) and Travelers admitted it received notice of the Kirkwood matter as defined by its Policy.  (Doc. 61-29).  Travelers has never raised the notice defense with respect to the Kirkwood claim, and in fact admits the Kirkwood claim falls under the 2009 – 2010 policy period because the Kirkwood claim "arose and was tendered in 2009." (Doc. 76 at 15).   It is undisputed Travelers hired counsel to defend the counterclaim in the Kirkwood matter, and the Kirkwood and Lewis cases were consolidated on October 8, 2009. (Doc. 61-3).    Travelers' designated Corporate Representative, Melissa Morin, admitted in deposition the Kirkwood litigation and the Lewis litigation were based on the same Wrongful Act, namely the filing of lawsuits based on expired restrictive covenants, and indeed the two matters were substantively consolidated by the state court on this basis.  (Doc. 61-12).  Therefore, Travelers contention in its response to Culbreath's Motion for Summary Judgment that it did not know of the Lewis claim for nineteen months until it received the July 2010 letter from Culbreath requesting coverage for the impending fee

judgment is disingenuous in light of Travelers' involvement and <u>actual knowledge</u> of the consolidated case in which the Lewises were a named party.

Despite having actual knowledge of the Lewis claim, Travelers attempts to disclaim coverage by arguing that the July 20, 2010 letter did not constitute proper notice within the "policy period itself." (Doc. 76 at 15 fn.12).  Travelers contends the policy was a claims-made policy, and a claims-made policy requires notification be given to the insurer within a reasonable time or as soon as practicable so long as the notice is given during the applicable policy period. (Doc. 76 at 15 fn.12). Pursuant to the Policy, under General Conditions and Limitations – Limits of Liability and Retention:

> Losses based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insured shall be considered a single Loss incurred as a result of a single Claim, <u>which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act</u> or for one or more of such Related Wrongful Acts is made against any of the Insureds, whether such date is before or after the Policy Inception Date.

As such, pursuant to the terms of the Policy recited above, the Lewis and Kirkwood claims are deemed to constitute a single claim and are further deemed to have been made on the date the Kirkwood claim was made.  Melissa Morin, Travelers' Corporate Representative, testified she would accept a letter as adequate notice of a claim, admitted to receiving notice in the July 16, 2009 letter of the Kirkwood claim, and Travelers has explicitly stated in its pleadings there is no dispute the Kirkwood claim was tendered in 2009.  Given the language of the Policy, the Lewis claim is deemed to have been made during the 2009 policy period, when the claim of the loss arising out of the same consolidated lawsuit was made.

Furthermore, The Eleventh Circuit Court of Appeals in deciding whether both of these claims were "wrongful acts" covered by the Travelers policy examined these two claims as one in determining that coverage did in fact exist.  The Court determined the wrongful act of bringing these two lawsuits, against Kirkwood and the Lewises, which were ultimately

consolidated into one given the similarity of the nature of the claims, were in fact "wrongful acts" under the policy.    The language of the policy says these two claims shall be considered a single Loss incurred as a result of a single Claim, which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act, which Travelers concedes was during the 2009 policy period.

Should the Court wish to look beyond the plain language of the policy, which dictates both claims <u>shall</u> be considered a single loss and that claim shall be deemed to have been made on the date of the first claim, Travelers' late notice argument still fails for several reasons.  It is undisputed Travelers received Francis Friscia's letter of July 20, 2010 seeking a determination of whether there was coverage for the attorneys' fees claim in Lewis.  (Doc. 61-7; 61-24). This letter was sent in response to the Court's entry of the Final Summary Judgment Order and the Lewises' June 23, 2010 Motion to Tax Attorneys' Fees and costs.  As is consistently noted by Travelers in its improper denial of the coverage, there was no counterclaim with respect to the Lewis lawsuit.  In denying coverage Travelers relied upon this fact to assert there was no claim for which coverage would extend with respect to the Lewis lawsuit, a notion rejected by the Eleventh Circuit Court of Appeal.  Once an insurance company denies coverage, it cannot rely upon other conditions to coverage under the policy.  See, e.g., <u>Nu-Air Mfg v. Frank B. Hass & Co. of New York</u>, 822  F.2d 987, 993 (11th Cir. 1987); <u>Gallagher v. Dupont</u>, 918 So.2d 342, 347 (Fla. 5th Cir. DCA 2005).  Therefore, Travelers cannot deny coverage and then turn around and assert Culbreath did not properly comply with the notice provisions of the policy when Travelers' set forth the position the policy did not apply to the claim.

Additionally, using Travelers' own rationale with regard to the Lewis claim, the first time a "claim" became viable with respect to the Lewis case was when the Court first determined the Lewises were a prevailing party in the underlying litigation and <u>may</u> be entitled to attorneys' fees

and costs.   An insurer will not be relieved of liability where notice is not given as soon as practicable if the insured can demonstrate the insurer has not been prejudiced.   Tiedtke v. Fidelity & Cas. Co., 222 So.2d 206, 209 (Fla. 1969); see also, Bankers Insurance Co. v. Macias, 475 So.2d 1216, 1218 (Fla. 1985).   This is especially important in this case because there was no prejudice to Travelers prior to the point of being notified on July 20, 2010.   At the time of Francis Friscia's July 20, 2010 letter, the Lewises' entitlement to any fees had not been decided by the state court.   Travelers still had the opportunity to provide a defense to the fee claims at that time and could have, and should have, done so.   Francis Friscia's July 2010 letter to Travelers was timely notice to Travelers of the Lewis claim asking Travelers to step in at that time and provide a defense for the Claim.   Additionally, Travelers' specifically designated Corporate Representative, Melissa Morin, admitted she had actual knowledge of the Lewis fee claim prior to any judgment for fees being imposed.   (Doc. 61-18).   Knowing of the claims in plenty of time to act for its insured, Travelers simply denied coverage.

In addition to having actual knowledge of the claim, Travelers failed to provide its insured with notice of this defense as required by the Florida Claims Administration Statute, §627.426, Florida Statutes.   The only bases for denial of coverage set forth in Melissa Morin's coverage letter, in the Lewis claim, is the lack of a Wrongful Act alleged against Culbreath Isles, and neither the Motion for Summary Judgment nor the Motion for Attorneys' Fees constituted a Claim under the Policy.   (Doc. 61-28).   The denial letter did not assert late notice as a basis for denying coverage.   Pursuant to Florida's Claims Administration Statute;

> A liability insurer shall not be permitted to deny coverage based on a particular coverage defense unless:
>     (a)   Within 30 days after the liability insurer knew or should have known of the coverage defense, written notice of reservation of rights to assert a coverage defense is given to the named insured by registered or certified mail sent to the last known address of the insured or by hand delivery; and

11

(b)   Within 60 days of compliance with paragraph (a) or receipt of a summons and complaint naming the insured as a defendant, whichever is later, but in no case later than 30 days before trial, the insurer:

    1.   Gives written notice to the named insured by registered or certified mail of its refusal to defend the insured;

    2.   Obtains from the insured a nonwaiver agreement following full disclosure of the specific facts and policy provisions upon which the coverage defense is asserted and the duties, obligations, and liabilities of the insurer during and following the pendency of the subject litigation; or

    3.   Retains independent counsel which is mutually agreeable to the parties. Reasonable fees for the counsel may be agreed upon between the parties or, if no agreement is reached, shall be set by the court.

Section 627.426(2), Florida Statutes.  Late notice is a defense to coverage that falls within the Claims Administration Statute and must be asserted in accordance with the procedure prescribed in §672.426(2).  Florida Physicians Ins. Co. v. Stern, 563 So. 2d 156, (Fla. 4th DCA 1990). If late notice is not asserted in accordance with the Claims Administration Statute the Court should preclude the insurer from asserting it as a defense to coverage. Auto-Owners Ins. Co. v. Brockman, 524 So. 2d 490, 493 (Fla. 5th DCA 1988).

Even accepting July 20, 2010 as the date by which Travelers was first notified of the Lewis fee claim, a contention Culbreath still disputes, Travelers did not provide written notice within 30 days of a reservation of rights to assert a coverage defense.  Consequently, Travelers did not comply with §627.426(2)(b).  Travelers sent a denial letter on October 27, 2010, more than 90 days after the date of the request for coverage, and that denial letter did not list late notice as a basis for denying coverage.  Moreover, as demonstrated above, Travelers had actual notice of the Lewis lawsuit and potential fee claims well before July 20, 2010.  Therefore, if Travelers intended to deny coverage based on a claim of late notice, Travelers should have known this defense well before July 20, 2010 and failed to comply with the statute and properly notify Culbreath of its intentions to deny coverage on these grounds.

## B.  <u>Misrepresentation</u>

Travelers' misrepresentation argument fails for the same reasons its late notice argument fails. Yet again Travelers incorrectly asserts the applicable policy is the 2010 policy. Travelers also alleges Culbreath misrepresented information on the 2010 renewal application the result of which Travelers contends rendered the 2010 policy null and void.  This argument fails for several reasons.

### 1.  <u>The 2009 – 2010 Policy is the Operative Policy</u>

As explained in detail above, the applicable policy is the February 20, 2009 – February 20, 2010 policy.  The policy language, drafted by Travelers, provides a loss based upon or arising out of the same Wrongful Act or Related Wrongful Acts of one or more of the Insureds <u>shall</u> be considered a single Loss incurred as a result of a single Claim, <u>which Claim shall be deemed to have been made on the date the first Claim for such Wrongful Act</u>.  Travelers concedes the Kirkwood claim falls within the 2009-2010 policy, and the Eleventh Circuit Court of Appeals has determined these claims were wrongful acts covered by the policy. Therefore, Travelers' misrepresentation argument is without merit as the 2010 policy does not apply to these claims in the first place.

### 2.  <u>Travelers Knew of the Pending Suits so the Application was not Material</u>

Travelers' misrepresentation argument even fails to render the 2010 - 2011 policy void. Travelers contends Culbreath failed to accurately fill out the application for renewal of the Travelers' policy for the 2010 through 2011 policy period.  Travelers contends Culbreath did not disclose the existence of the Lewis and Kirkwood lawsuits in response to questions asking if there had been any suit or legal action filed on or behalf of the Association against any member of the Association or if any claim or lawsuit was pending against the Association.  As such, Travelers argues the 2010-2011 policy is voidable and/or subject to rescission.

13

It is uncontested the February 5, 2010 application was filled out incorrectly.  The then President of the Board of Directors for Culbreath Isles testified the application was filled out by the management company for the Association, he simply signed what was put in front of him, and had no intent to deceive Travelers in any way. (Doc. 61-45).  It is also undisputed Travelers had <u>actual knowledge</u> of both the Lewis and Kirkwood suits at the time it renewed the policy with the Association.

Section 627.409 governs misrepresentations in an insurance application. An insurer seeking to rescind an insurance policy on the basis of misrepresentation bears the burden to plead and prove the misrepresentation, its materiality, <u>and the insurer's detrimental reliance</u> upon that misrepresentation. <u>Griffin v. Am. Gen. Life & Accident Ins. Co.,</u> 752 So. 2d 621, 623 (Fla. 2d DCA 1999).  To show detrimental reliance the insurer must show the misrepresented facts would result in or cause the company to charge a higher premium for the unrevealed risk. <u>Fecht v. Makowski,</u> 172 So. 2d 468, (Fla. 3d DCA 1965).  It is well settled in insurance law that, when an insurer has knowledge of the existence of facts justifying a forfeiture of the policy, any unequivocal act which recognizes the continued existence of the policy or which is wholly inconsistent with a forfeiture, will constitute a waiver thereof.  <u>Johnson v. Life Ins. Co.,</u> 52 So. 2d 813, 815 (Fla. 1951).  While, ordinarily, the insurer is not deemed to have waived its rights unless it is shown it acted with the full knowledge of the facts, the intention to waive such rights may be inferred from a deliberate disregard of information sufficient to excite attention and call for inquiry as to the existence of facts by reason of which a forfeiture could be declared. Id. (citing <u>Zeldman v. Mutual Life Ins. Co. of New York,</u> 269 App. Div. 53, 53 N.Y.S.2d 792, 794, in which it was stated that "Constructive notice may, however, be the legal equivalent of knowledge, in the sense that circumstances putting the insurer on notice may not be deliberately disregarded;" <u>Loduca et al. v. St. Paul Fire & Marine Ins. Co.,</u> Mo. App., 105 S.W.2d 1011;

Columbian Nat. Life Ins. Co. v. Rodgers, 10 Cir., 116 F.2d 705; Supreme Lodge K.P. v. Kalinski, 163 U.S. 289, 16 S. Ct. 1047, 41 L. Ed. 163; Armourdale State Bank v. Homeland Ins. Co., 134 Kan. 245, 5 P.2d 786).  The insurer is charged with all knowledge that it *might* have obtained had it pursued the independent inquiry to the end with reasonable diligence and completeness. Fecht v. Makowski, 172 So. 2d 468, (Fla. 3d DCA 1965).

Based on the undisputed facts outlined above, it is impossible for Travelers to show any detrimental reliance upon the incorrect response indicating there were no outstanding claims because Travelers actually knew of the outstanding claims.  Travelers had counsel involved in the lawsuits and by virtue of counsel's involvement he had actual knowledge there were fee claims asserted by both Kirkwood and Travelers. Travelers retained counsel to defend the counterclaim in the Kirkwood suit by August 4, 2009 at the very latest, well before the February 5, 2010 renewal date.   (Doc. 61-8).   Further, the Kirkwood and Lewis suits had been consolidated as of October 8, 2009, also well before February 5, 2010.  Travelers admits the Kirkwood claim falls within the 2009 policy period, thus admitting it had actual knowledge of the Kirkwood claim before the February 2010 renewal period. Travelers' claims person and specifically designated Corporate Representative, Melissa Morin, received copies of most pleadings in the consolidated matters and otherwise had actual knowledge of the Lewis and Kirkwood matters at the time the renewal application was completed. Melissa Morin also testified it was the Lewis and Kirkwood matters that led to the Association being removed from Travelers' auto-renew category and are what necessitated the renewal application.  (Doc. 61-46). Despite actual knowledge of the Lewis and Kirkwood suits, Travelers chose to reissue the same policy at the same premium.  Given Travelers' actual knowledge, it cannot now claim it was prejudiced in any way by the alleged misrepresentation in the renewal application and seek to rescind or void the policy.

3.   <u>Travelers is Barred by its Failure to Seek Rescission</u>

Travelers waived its misrepresentation defense by failing to seek rescission of the policy, tender a refund of the premiums and by failing to raise the affirmative defense in its initial Answer and Affirmative Defenses.  An insurer cannot permanently retain the benefits of a late premium payment and still deny coverage to the insured. <u>Pajcic v. Am. Gen. Life Ins. Co</u>., 419 F. Supp. 2d 1380 (M.D. Fla. 2006). Travelers has never sought rescission of the Policy nor tendered a refund of premiums paid for the Policy.  (Doc. 61-48).

4.   <u>Travelers Waived its Right to Raise a Misrepresentation  Argument</u>

Travelers waived the misrepresentation defense by failing to raise the defense in its December 27, 2011, initial Answer and Affirmative Defenses.  Travelers did not assert a misrepresentation defense until May 15, 2013, when Travelers filed its Second Amended Answer to the Second Amended Complaint.  Travelers did not raise this as a basis for denial of coverage in its October 27, 2010, letter to the Board of Culbreath Isles.  In fact, Melissa Morin, the specifically designated Travelers' Corporate Representative, admitted she did not even examine the issue of misrepresentation until shortly before her first deposition on April 26, 2013. (Doc. 61-47).  Therefore, should the Court reject Culbreath's arguments the 2010 – 2011 policy is not applicable to this case and even if that policy does apply, Travelers' actual knowledge of the Lewis suit prevents it from asserting claims of misrepresentation, at the very least, Travelers waived its defense of misrepresentation by failing to properly plead this defense or assert it at any time prior to the deposition of its corporate representative.

The other Affirmative Defenses raised in Travelers' Second Amended Complaint have either been rejected by the Eleventh Circuit opinion, are not directed at Culbreath, or are addressed herein.

16

## IV.    Amount of Attorney's Fees Requested by Culbreath is Reasonable

While not raised in its Motion for Summary Judgment, Response in Opposition to Plaintiff Culbreath's Motion for Summary Judgment, or in any of its affirmative defenses, Travelers asserted before this Court for the first time in its Response to Culbreath's Motion for Entry of Final Judgment, filed in response to the Eleventh Circuit Court of Appeals' Order finding coverage, that the amount of attorney's fees demanded by Culbreath is unreasonable. (Doc. 102 at 9).

Travelers argues an award of $212,417.00 is excessive because the state court entered a final judgment awarding $101,859.43. Travelers inappropriately suggests that Culbreath agreed to a settlement amount with the Lewises in the amount of $212,417.00 because "Culbreath was already contemplating seeking indemnity from Travelers for the Lewises' fees, which no doubt played a role in the association's decision to pay an additional amount that more than doubled what the court had already awarded." (Doc. 102; 10 fn.3). While Travelers has no problem attacking the ethical nature of Culbreath's good faith attempt to limit its exposure as much as possible when Travelers wrongfully denied coverage and subjected its insured to unknown liability, Travelers conveniently leaves out the facts surrounding the settlement agreement and basis for fees incurred. A full evidentiary hearing was held with respect to the underlying case, after which the Court entered judgment against Culbreath in the amount of $101,859.43. The court reserved jurisdiction to award the Lewises further fees and costs, pending resolution of an appeal filed by Culbreath. As noted above, Culbreath initially appealed the trial court's ruling of Summary Judgment in favor of the Lewises and Kirkwood and had a good faith basis for doing so. While the appeal was pending and attorneys' fees were being incurred associated with the appeal, the state court entered judgment against Culbreath for fees and costs associated with the underlying state court case. It was during this time Travelers denied coverage for the Lewis

claim.  At the time of the settlement negotiations between counsel for the Lewises and Culbreath, the total amount of fees for the Lewis claim was $274,714.53. (Doc. 67-25 at 27).  Faced with the potential for liability for increasing attorneys' fees associated with the appeal and no coverage from its insurer, Culbreath attempted to mitigate its exposure by agreeing to dismiss its viable appeal and reaching an agreement to pay for the attorneys' fees incurred for defending the appeal. In exchange for Culbreath's dismissal of the appeal, Lewis and/or their counsel agreed to accept a fee reduction of $62,297.53.  The agreed upon amount of appellate attorneys' fees was $110,557.57, for a total of $212,417.00.   Therefore, contrary to Travelers unsupported contentions that Culbreath flippantly agreed to an additional amount of attorneys' fees that "more than doubled what the court had awarded," Culbreath vigorously negotiated the total amount of fees owed to the Lewises and reduced the claim by $62,297.53. Conversely, the Lewises recognized the risk associated with moving forward with Culbreath's viable appeal, and thus, agreed to accept a reduced fee amount in an effort to resolve the matter.

Where an insurer wrongfully refuses to defend, the insured is entitled to make a reasonable settlement. American Empire Surplus Lines Ins. Co. v. Gold Coast Elevator, 701 So. 2d 904, (Fla. 4th DCA 1997). Where an insurer denies coverage and refuses to defend, it is barred from raising any defense it could have raised in the underlying civil action.  Gallagher v. Dupont, 918 So.2d 342, 347 (Fla. 5th DCA 2005); Wright v. Hartford Underwriters Ins. Co., 823 So.2d 241 (Fla. 4th DCA 2002).  Therefore, Travelers should not be permitted to turn its back on its insured and then now challenge the reasonableness of an agreement the insured is forced to make to protect itself.  Travelers could have been involved with the evidentiary hearing held to determine the amount of fees and in the ultimate settlement agreement had it not abandoned its insured.

## V.    Public Policy Concerns if Coverage Avoided Under These Circumstances

In Travelers' Motion for Summary Judgment and Response in Opposition to Culbreath's Motion for Summary Judgment it consistently brings up that a finding of coverage under these circumstances would create an "absurd" and "ridiculous" result.  To the contrary, permitting Travelers to avoid coverage when it has now been determined that the plain language of the policy provides coverage under these circumstances would fly in the face of the clear intentions of the parties and would encourage bad faith activities by insurers.  Travelers has a contractual and fiduciary duty to its insured, Culbreath, to uphold its promises made to Culbreath in exchange for its acceptance of premiums, over the course of many years, which Travelers has retained in its coffers to this date.  Instead of protecting its insured as agreed to in the policy, Travelers summarily denied coverage, citing in its denial letter only those grounds for denial that have now been determined to be wrongful by the Eleventh Circuit Court of Appeal.  Travelers did not send Culbreath a reservation of rights letter with respect to the Lewis claim.  It did not assert defenses of late notice or misrepresentation.  With the risk of ever increasing exposure Culbreath was forced to relinquish its rights to appeal the underlying case, which may have resulted in Culbreath being able to resurrect its restrictive covenants, in avoiding the judgment for fees to Kirkwood and the Lewises and could have potentially resulted in a judgment in favor of Culbreath for its fees incurred pursuing the underlying case. Culbreath was forced instead to protect itself when its insurer left it exposed.  Now allowing Travelers to continue to concoct excuses to avoid its obligations and agreements made to Culbreath should not be tolerated.

## VI.    Conclusion

For all the reasons stated above, as well as the reasons set forth Plaintiffs' Motions for Summary Judgment, Culbreath is entitled to final summary judgment in this matter.  Culbreath

joins, adopts and incorporates by reference all arguments made by Co-Plaintiffs, Orline Sidman and Florida Policy Holders, LLC.

**VII.  Renewed request for oral argument.**

Culbreath requests the opportunity for oral argument in this case.

WHEREFORE, Plaintiff, Culbreath, respectfully requests this Court enter Final Judgment in its favor and against Travelers Casualty and Surety Company of America.  Should the Court not enter Final Judgment in Culbreath's favor and against Travelers, it requests this Court schedule a trial for resolution of those issues.

BUSH GRAZIANO RICE & PLATTER, P.A.

/s/ Ronald E. Bush
Ronald E. Bush
Florida Bar No. 443964
Karen M. Shimonsky
Florida Bar No. 0093031
101 E. Kennedy Blvd., Suite 1700
P.O. Box 3423
Tampa, Florida 33601-3423
Phone: 813.228.7000; Fax: 813.273.0091
rbush@bgrplaw.com
Attorneys for Culbreath Isles Property Owners
Association, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 12, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and the notice of electronic filing by first class mail to the following non-CM/ECF participants: None.

/s/ Ronald E. Bush
Attorney